[No. 1116.]

GEORGE PETERSON, RESPONDENT, v. H. C. BROWN, APPELLANT.

DEED EXECUTED TO DEFRAUD CREDITORS—FRAUDULENT GRANTOR CANNOT TAKE ADVANTAGE OF HIS OWN FRAUD—PLEADINGS—DEMURRER.—In an action of ejectment to recover a town lot, the defendant filed an answer alleging that he voluntarily executed and delivered the deed, upon which plaintiff relies, without consideration, for the sole purpose of hindering, delaying and defrauding his creditors; that plaintiff accepted the deed with full knowledge of the facts, and agreed, upon demand and without consideration, to reconvey the property to defendant; that defendant did not surrender the possession, and that the plaintiff has never been in the possession thereof: *Held*, that the averments in the answer, setting up the fraud, did not constitute any defense to the action, and that plaintiff's demurrer to the answer was properly sustained.

IDEM—INDIVISIBILITY OF FACTS ALLEGED.—Defendant, in his answer, denied that plaintiff was the owner of the property; that defendant withheld the same except as the true owner thereof and as hereinafter set forth, and then "for other and further answer" the facts relating to the mutual fraud are stated: *Held*, that the facts constituted but one transaction, and are indivisible.

APPEAL from the District Court of the Sixth Judicial District, Eureka County.

The facts are stated in the opinion.

*R. M. Beatty*, for Appellant:

I. Contracts in violation of a statute are utterly void, whether the *consideration* of *the agreement* or the *act per-*

*formed* be in its violation. (Storey on Cont., chap. 8; 22 Pick. 181; *Thomas* v. *City of Richmond*, 12 Wall. 356; *Smith* v. *City of Albany*, 7 Lans. 14; *Hunt* v. *Knickerbocker*, 5 Johns. 327; *Wheeler* v. *Russell*, 17 Mass. 257.)

II. We admit that respondent is entitled to the deed, and that appellant cannot go into court and enforce a reconveyance to himself ; but we contend that the same law which precludes appellant in that, must prevent respondent from enforcing his apparent right to the possession of the land under the deed, or the collection of rents or damages. For if either appear there it must be with clean hands, or be debarred of equity. (Bump. on Fraud. Con., secs. 436, 440--1, 448; *Saratoga Bank* v. *King*, 44 N. Y. 94; 1 Storey, Eq. Jur. 298; *Chamberlain* v. *Thompson*, 10 Conn. 243; 3 Waits A. & D. 199, 2 Ves. 573; 1 John. Ch. 300; 15 Mass. 38; *Raguet* v. *Roll*, 7 Ohio, 79; *Moore* v. *Adams*, 8 Ohio, 375; 50 Cal. 327; 2 Kent's Com. 566; 2 Stark. Ev. 87.)

III. Respondent claimed that a defendant cannot plead his own fraud, or the mutual fraud or violation of law of a plaintiff and himself, and the court so held. If I am right in the preceding points, that the doctrine of "in equal fault" courts will grant no redress to either party, then the plea of that fault, fraudulent contract or contract in violation of statute or *contra bonos mores* is a good defense to an action on the contract, and a defendant's answer may contain any new matter constituting a defense. (1 Comp. L. 1109.) Suppose Brown had brought an action against Peterson for a reconveyance, or to set aside his deed, alleging want of consideration, duress or some other matter as the cause of its execution or invalidity, would not P. then have the right to set up the fraud and invoke the maxim of *in pari delicto*, etc. How, otherwise, could the rule have been established ? How get the matter before a court ? The plaintiffs would not, could not, plead such fraud. It could only be done by the course I have pursued, to-wit: state all the facts constituting the defense, and ask to be dismissed the action without relief, thus placing the court in a position to leave both parties "*severely alone.*" P. then gets nothing by his act, and B. is fully punished for his, in that he never can regain the paper title or convey the

property. (2 Nev. 545–6; 7 Ohio 79; *Burt* v. *Wilson*, 28 Cal. 638; *Ager* v. *Duncan*, 50 Cal. 327; *Holman* v. *Johnson*, 1 Cowp. 343.)

IV. The matters of the answer, aside from the question of fraud, make a complete issue joined, and striking out all pleading of defendant's own wrong, there still remains an issue and a defense, sufficient, properly stated, to entitle the appellant to go to trial on such issue ; and the respondent was, therefore, in no view of the case presented, entitled to a default or judgment.

*Wren & Cheney,* for Respondent :

I. There was no defense of a want of consideration set forth in the answer, outside of the defense of the fraudulent nature of the transaction. The answer did not state facts sufficient to constitute a defense to the action, and the order of the court in sustaining the demurrer and entering judgment upon default, was not erroneous. (1 Comp. L. 297; *Jackson* v. *Garnsey*, 16 John. 189; Leake's Law of Cont. 147; Pars. on Cont. 429; *Randall* v. *Phillips*, 3 Mas. 379; *Backhouse* v. *Jelt*, 1 Brock. 500; *Laberee* v. *Carleton*, 53 Me. 211; *Jewell* v. *Porter*, 31 N. H. 34; *Kid* v. *Mitchell*, 1 Nott & M., S. C., 339.) At common law contracts to defraud creditors were valid and binding between the parties thereto. (*Findley* v. *Cooley*, 1 Blackf. 262; *Gillespie* v. *Gillespie*, 2 Bibb, 89; *Clemens* v. *Clemens*, 28 Wis. 652.) And under the statute the contract is not void, but merely voidable. (Bump on Fraud. Con. 481, 436, 447.) Whatever the parties to an action have *executed* for fraudulent purposes, the law refuses to lend its aid to enable either party to disturb. (Bump on Fraud. Con. 447; *Ager* v. *Duncan*, 50 Cal. 325; *Brooks* v. *Martin*, 2 Wall. 81; *Planters' Bank* v. *Union Bank*, 16 Wall. 499.) A deed regularly executed and delivered is an executed contract. (*Moore* v. *Adams*, 8 Ohio, 373; *Canton* v. *Dorchester*, 8 Cush. 525; *Fletcher* v. *Peck*, 6 Cr. 136.) The execution and delivery of a deed of conveyance carries the absolute legal title to the grantee. (*Ruhling* v. *Hackett*, 1 Nev. 360; *Lawton* v. *Gordon*, 34 Cal. 36.) And the grantee may sell and convey his interest therein in the

same manner, and with the same effect, as if he was in the actual possession. (1 Comp. L. 263.)

II. In an action of ejectment by the grantee against the grantor to recover the possession of the premises conveyed, the grantor cannot be heard to aver his iniquity to avoid the effects of his deed, when, by permitting him to do so, it would aid him in achieving the desired end of his fraudulent adventure. (*Cushwa* v. *Cushwa*, 5 Md. 44; *Murphy* v. *Hubert*, 16 Pa. St. 50; *Broughton* v. *Broughton*, 4 Rich. 492; *Gillespie* v. *Gillespie*, 2 Bibb, 89; *York* v. *Merritt*, 80 N. C. 285; *Jackson* v. *Garnsey*, 16 John. 189; *Reichart* v. *Castator*, 5 Binn. 109; *Epperson* v. *Young*, 8 Tex. 135; *Hoeser* v. *Kraeka*, 29 Tex. 450; *Chapin* v. *Pease*, 10 Conn. 69; *Burgett* v. *Burgett*, 1 Ohio, 469; *Allison* v. *Hagan*, 12 Nev. 38; *Ager* v. *Duncan*, 50 Cal. 327; *Lawton* v. *Gordon*, 34 Cal. 36; *Ybarra* v. *Lorenzana*, 53 Cal. 197; *Ellis* v. *Higgins*, 32 Me. 34; *Gifford* v. *Ford*, 5 Vt. 532; *Daniels* v. *Fitch*, 8 Pa. St. 495; *McClenny* v. *Floyd*, 10 Tex. 159; *Edwards* v. *Haverstick*, 53 Ind. 348; *Church* v. *Church*, 4 Yeates, 280.)

By the Court, HAWLEY, J.:

This is an action of ejectment to recover the possession of a town lot, with the rents and profits and damages for the detention.

The defendant filed an answer, alleging that he voluntarily executed and delivered the deed, upon which plaintiff relies, without consideration, and for the sole purpose of hindering, delaying and defrauding his creditors, and that plaintiff accepted the deed with full knowledge of the facts, and agreed, upon demand and without consideration, to reconvey the property to defendant. It is further alleged that defendant did not surrender the possession, and that plaintiff has never been in the possession thereof.

A demurrer was interposed to this answer, and sustained by the court, upon the ground that it did not state facts sufficient to constitute a defense to this action.

Did the court err in sustaining the demurrer? This is the only question which the record presents.

Appellant argues that the allegations in his answer, relating

to the fraudulent purpose of the deed and the mutual fraud of the parties, constitute a valid defense.

He does not deny the correctness of the decisions of this court in *Allison* v. *Hagan*, 12 Nev. 38, and *McCausland* v. *Ralston*, 12 Nev. 195, where many of the principles applicable to this case were elaborately discussed. He concedes the doctrine that a deed executed for the purpose of hindering, delaying and defrauding creditors is an executed contract; that it is valid and binding as between the parties, and that the courts will not lend their aid to set it aside, and contends that by parity of reasoning "the same law which precludes appellant in that, must prevent respondent from enforcing his apparent right to the possession of the land under the deed, or the collection of rents or damages." He is willing that both parties may remain just where they are found. Respondent may keep his deed, but appellant wants to retain possession of the property. He desires to be let alone, and claims that the courts ought not to interfere because the respondent colluded with him to defraud his creditors, and that, inasmuch as respondent has never obtained possession of the property, the courts ought not to aid him in receiving a reward for his own iniquity. This sounds very well, and, at first blush, might seem to be possessed of some merit. But, upon examination of the authorities, and a consideration of the reason and policy of the law, it is evident that the position for which appellant contends cannot be sustained. The rule is well settled that "whatever the parties to an action have executed for fraudulent or illegal purposes, the law refuses to lend its aid to either party to disturb." (Bump on Fraud. Con. 449; *McCausland* v. *Ralston*, 12 Nev. 206, and authorities there cited.)

Where a deed has been executed and delivered for such a purpose, the grantor will not be heard to avoid his deed. "It is a mistake to suppose that the parties being *in pari delicto*, the court will refuse the remedy demanded by the plaintiff." The deed, as between the plaintiff and defendant, is perfectly good. "The defendant, by a stern but a proper policy of the law, is excluded from the proof which would show the fraud. He is, in this respect, the actor; his fraud

silences and estops him from averring against his deed."
(*Broughton* v. *Broughton*, 4 Rich. S. C. 497.)

The reason and policy of the law, in this respect, is well
stated by Justice Green in *Stark's Ex.* . v. *Littlepage*, 4
Rand. 372: " It is a general rule that ' *in pari delicto potior
est conditio defendentis.*' * * * But this rule operates
only in cases where the refusal of the courts to aid either
party frustrates the object of the transaction, and takes away
the temptation to engage in contracts *contra bonos mores*, or
violating the policy of the laws. If it be necessary, in order
to discountenance such transactions, to enforce such a contract
at law, or to relieve against it in equity, it will be done, though
both parties are *in pari delicto*. The party is not allowed to
allege his own turpitude in such cases, when defendant at
law, · * * * whenever the refusal to execute the contract
at law * * * would give effect to the original purpose, and
encourage the parties engaging in such transactions." * *
* " The contract is enforced or avoided, both in law and
in equity, as may best answer the purpose of discouraging the
fraud, or contract against the policy of the law; and it is for
this purpose, and not because the defendant is, in such cases,
strictly entitled on his own account to be discharged from his
·contract, that *in pari delicto* * *. * ; a rule which, in
general, discourages vicious . contracts, but which is not
enforced when it would counteract this policy of the law."
(*Cushwa* v. *Cushwa*, 5 Md. 52.)

In this case it must be apparent to every layman, as well as
lawyer, that if we would allow the defendant to plead the
mutual fraud of the parties in order to enable him to avoid
the consequences of his deed by being allowed to remain in the
possession of the property, without the payment of rents or
damages, he would virtually reap the reward of his own
iniquity when he was the real actor in the fraud, and the
effect would be to encourage others in violating the law, with
a hope to profit by defrauding their creditors, and no chance
to lose, even if their grantee should attempt to take advan-
tage of his position, and thereby to promote, instead of dis-
courage, contracts of like character; whereas, by denying him

the relief he seeks, the effect would be, what the law intends it should be, to make the way of the transgressor so difficult and dangerous as to at least discourage, if not entirely prevent, him and others from engaging in such fraudulent transactions. Let the grantor know that if he does execute and deliver a deed of his property for such a fraudulent purpose, and thereby is enabled to escape the legal rights of his creditors, that he is liable to get caught in his own trap, and lose his property, by the act of his fraudulent grantee, and the result will certainly have a tendency to discourage him from again attempting to make such disposition of his property, and deter other fraudulently disposed persons from engaging in such transactions. Being dishonest themselves, they would naturally suspect the honesty of their grantee, and hence would be as likely to take their chances with their creditors as to make an effort to find a man whom they could trust to accept the position of a fraudulent grantee.

"The principle that a collusive contract binds the parties to it is a principle which commends itself no less to the moralist than to the jurist, for no dictate of duty calls on a judge to extricate a rogue from his own toils. On any other principle, a knave might gain, but could not lose by a dishonest expedient, and inducements could be furnished to unfair dealing, if the courts were to repair the accidents of an unsuccessful trick. It is, therefore, in accordance with a wise and liberal policy, which requires the consequences of a fraudulent experiment to be made as disastrous as possible, that a fraudulent grantee is allowed to retain the property, not for any merit of his own, but for the demerit of his confederate." (Bump on Fraud. Con. 442.)

The case of *Murphy* v. *Hubert*, 16 Penn. St. 57, is directly in point. In discussing the question relied upon by appellant, the court, among other things, said: "The defendant, however, insists that it is the plaintiff who claims through the medium of a fraud; that he invokes the aid of the court to turn the defendant out of possession of the premises. But this is a mistaken view of the situation of the parties. It would not hold a moment had we a court of chancery. * * * In the case in hand, the defense is not a legal, but an equi-

table defense, the defendant alleging that, although the deed purports to be an absolute deed in fee simple, yet it was intended in trust for the grantor and others. It is not the plaintiff that asks the aid of the court, but the defendant. The plaintiff's title is good. At law, the defendant has no defense whatever. Were the case in equity, * * * by which mode only would the defendant be entitled to retain the possession, the chancellor would refuse relief when it appeared that defendant, who asked the aid of the court, had been guilty of a fraud in attempting to screen his property from the just claims of creditors. The chancellor would refuse to interfere. He would leave the party to his remedy at law, where the plaintiff would be entitled to recover on the well-settled principle that, although the deed was void as to creditors, yet the title is valid as between the parties. The defendant thinks that being in possession differs this from the cases ruled; but this is not so, as is shown in the cases cited, and on principle. If it were, it would nullify the rule. All that would be necessary would be for the fraudulent grantor either to retain the possession himself or to give the possession to his children or other beneficiaries named in the parol or written trust. The rule is founded in policy. The reason is extracted from one of the cases cited, which is correctly given by the judge. Courts of justice do not sit to extricate a rogue from his toils. To enable a party to show a secret trust in the face of an absolute deed, the purpose must have been an honest one, else, by secret fraudulent device, a dishonest man would be sure never to lose, and he has the chance of gaining. He may accomplish his fraudulent design, and then he is sure to get back his property, or what is the same thing, keep it for his family. This would be affording encouragement to such frauds. On the contrary, it is the policy of common sense and common law to environ a person with all possible perils, and to make it appear that honesty is the best policy."

The averments in the answer setting up the fraud do not constitute any defense.

It is, however, argued by appellant that, aside from the question of fraud, the answer stated a good defense, and that the demurrer, if sustained at all, "should have been so only

as to that portion of the answer which sets up the question of mutual fraud." This position is equally untenable. The only defense raised by the answer relates to the question of fraud. If that issue fails, the others fall.

The answer denies that plaintiff is the owner of or entitled to the possession of the property; denies that defendant "in any manner withheld or withholds the same or any part thereof from plaintiff except as the true and actual owner thereof, and *as hereinafter set forth and stated,*" and then "for other and further answer and matter of defense" the facts relating to the mutual fraud of the parties are specifically stated. These facts constitute but one transaction and are indivisible.

The judgment of the district court is affirmed.