[No. 1306.]

THOMAS E. HALEY, APPELLANT, v. EUREKA COUNTY BANK, ET AL., RESPONDENTS.

DEFAULT—WHEN IT SHOULD NOT BE SET ASIDE.—On application, to set aside the default of defendants, it appeared that the defendants procured the suit to be instituted against themselves. They employed one attorney for both sides, paid all fees, and managed the entire case for a time, withdrew a demurrer they had filed, and asked for and obtained ten days to file an answer, but filed none, and, after allowing nearly a year to pass without further action, a default was entered against them. They alleged that the action was an amicable one, instituted for their benefit, on plaintiff's verbal agreement to convey to them on obtaining judgment, and that plaintiff agreed not to take a default against them. *Held*, that this did not excuse their delay in filing an answer, and their negligence in having one attorney only to manage both sides of the case, and plaintiff's subsequent action in assigning the judgment to a third person, was not ground sufficient to authorize the court to set aside the default.

IDEM—RULES OF COURT—EFFECT OF.—The rules adopted by the district court and by the supreme court, were intended to be supplemental to the provisions of the statute as rules for the government of all proceedings in the district court, and have the same force and effect as if they were incorporated in their statutory provisions.

IDEM—VERBAL STIPULATION—NOT BINDING EVIDENCE.—Evidence of an oral agreement by plaintiff's attorney not to take any default against defendants is inadmissible on the application to set aside the default, as this would be in effect an enforcement of such agreement in violation of Rule 27 of the district court.

APPEAL from the District Court of the State of Nevada, Eureka County.

A. L. FITZGERALD, District Judge.

*Wren & Cheney*, for Appellants:

I. The only purpose of the action, as claimed by defendants, was to quiet their title. The attorney for the plaintiff was employed by defendants for that purpose. His action in taking the default was the authorized act of the defendants, and is binding upon them. (Weeks on Attys., Sec. 217.)

II. The court below should have stricken out all evidence of any agreement with the attorney of plaintiff, on the ground that it was not in writing. (Gen. Stat. 2538; *Borkheim* v. *North B. & M. Ins. Co.*, 38 Cal. 623; *Merritt* v. *Wilcox*, 52 Cal. 238; *Preston* v. *Hill*, 50 Cal. 53; 19 Am. Rep. 647; *Smith* v. *Polack*, 2 Cal. 92

*Goben* v. *Goldsberry*, 72 Ind. 44; *Louisville N. A. & C. R. Co.* v. *Boland*, 70 Ind. 595.)

III. The court erred in receiving or regarding oral testimony of agreements made out of court respecting the proceeding in the action. (Rule 27, District Court.) Rules of court adopted under statutory authority, without any reservation in the rules of a power to except any case from their operation, are as binding upon both courts and suitors as a statute. (Gen. Stat. 3612; *Quynn* v. *Brooke*, 22 Md. 295; *Dunbar* v. *Conway*, 11 G. & J. 97; *Thompson* v. *Hatch*, 3 Pick. 512; *Alexander* v. *Alexander*, 5 Pa. St. 277; *Tripp* v. *Brownell*, 2 Gray, 402; *Saint Croix L. Co.* v. *Pennington*, 2 Dakota, 480; *Hanson* v. *McCue*, 43 Cal. 178; *Coyote Co.* v. *Ruble*, 9 Or. 121; *Walker* v. *Ducros*, 18 La. Ann. 703; *Matter of Moore*, 108 N. Y. 280; *Wall* v. *Wall*, 2 Har. & G. 79: *Brooks* v. *Mead*, Walk. Ch. (Mich.) 389; *Hughes* v. *Jackson*, 12 Md. 450; *Maberry* v. *Morse*, 43 Me. 176; *Dixon* v. *Brophey*, 29 Iowa, 460.)

IV. The court should have disregarded the entire evidence of defendants, because, if true, it showed an agreement in direct violation of every moral and legal obligation and duty of an attorney to his client. (Weeks on Attys., Secs. 259, 260, 271, 287; *Wyatt* v. *Buell*, 47 Cal. 624.)

V. The evidence of defendants showed that they were not entitled to any relief from the default. That the suit was a fictitious one—fraud upon the court. (*Lord* v. *Veazie*, 8 How. 254; *Smith* v. *Brown*, 3 Tex. 360; 49 Am. Dec. 748; *Smith* v. *Junction R. Co.*, 29 Ind. 546 )

VI. The evidence shows that the whole design and purpose of the action was to perpetrate a fraud upon Townshend and his creditors, notwithstanding the defendants received and held the property in trust for him. Courts will not in any form of proceeding relieve a party from the consequences of the treachery of a confederate in an illegal and fraudulent transaction, but will give full force and effect to whatever has been executed. (*Peterson* v. *Brown*, 17 Nev. 172; 45 Am. Rep. 437; *Allison* v. *Hagan*, 12 Nev. 38; *McCausland* v. *Ralston*, 12 Nev. 195; 28 Am. Rep. 781.)

VII. A judgment will not be opened to enable a defendant to assert a fraudulent or inequitable defense. (*Marsh* v. *Lasher*, 13 N. J. Eq. 254; *Parker* v. *Grant*, 1 John. Ch. 630; *Barnett* v. *Barnett*, 83 Va. 504; *Ewing* v. *Jennings*, 15 Nev. 379.)

VIII. While a judgment obtained for the purposes and

under the agreement asserted by defendants is invalid as against those defrauded, it is valid and will be enforced as between the parties. (Freem. Judg. 522; *Dougherty's Estate*, 9 W. & S. 189; 42 Am. Dec. 326; *Thompson's Appeal*, 57 Pa. St. 175.)

IX. A party desiring to have a default set aside by motion, must show in support of his motion some of the statutory grounds. (*Gerish* v. *Johnson*, 5 Min. 23; *People* v. *O'Connell*, 23 Cal. 282; *Baker* v. *O'Riordan*, 65 Cal. 368.) The denial of the motion is no bar to an action to set aside the judgment on the ground of fraud. (*Blank* v. *Blank*, 107 N. Y. 91.)

X. After default the defendants have no right to participate further in the action. (*People* v. *Culverwell*, 44 Cal. 620.

*Baker & Wines*, for Respondents.

I. The clerk had no authority to enter a judgment by default. The contention of appellant that there has been a transfer of the judgment to an innocent purchaser is without merit. (Gen. Stat. 3174; *People* v. *Weil*, 53 Cal. 253; *Willson* v. *Cleaveland*, 30 Cal. 192; *Providence Tool Co.* v. *Prader*, 32 Cal. 634; 91 Am. Dec. 598; *Wharton* v. *Harlan*, 68 Cal. 422; *Ballard* v. *Purcell*, 1 Nev. 342.) The claim or demand of the plaintiff, not being upon contract, the clerk had no authority to enter the judgment. (*Elliot* v. *Jackson*, 3 Wis. 571; *Perry* v. *Washburn*, 20 Cal. 318.)

II. The evidence reviewed, and it is claimed that this court will brand the conduct of plaintiff as fraudulent. (Kerr Fr. 43, 44, 293, 294; *Martin* v. *Parsons*, 49 Cal. 94; *Kelley* v. *Kriess*, 68 Cal. 210; *McKinley* v. *Tuttle*, 34 Cal. 235; *United States* v. *Flint*, 4 Saw. 50; *United States* v. *Throckmorton*, 98 U. S. 61.)

III. If by any arrangement, agreement or understanding made with the plaintiff or his attorney, an unfair advantage has been obtained, or by which the defendants were prevented from making a defense upon its merits, and by which a default was taken when they had a right to believe that none would be taken, the court would still set aside such default and permit the defendants to make their defense. (2 Story Eq. J., Secs. 885, 887; *Pearce* v. *Olney*, 20 Conn. 543; *Dobson* v. *Pearce*, 12 N. Y. 156; 62 Am. Dec. 152; Her. Ex., Sec. 399; *Rowland* v. *Thompson*, 64 N. C. 714; *Jarman* v. *Saunders*, 64 N. C. 367; *Atkinson* v. *Cox*, 64 N. C. 576; *Johnson* v. *Eldred*, 13 Wis. 482; *Stafford* v. *McMillan*, 25 Wis. 566; *California Beet S. Co.* v. *Porter*, 68 Cal. 369;

*Cameron* v. *Carroll,* 67 Cal. 500; *Howe* v. *Coldren,* 4 Nev. 171; *Marine Ins. Co.* v. *Hodgson,* 7 Cranch, (U. S.) 332.) The practice now in cases similar to this is by a motion rather than by the old writs in vogue prior to the adoption of the code system. (Freem. Judg., Secs. 94, 95; *Ward* v. *Ward,* 59 Cal. 139.)

IV.   The statute, (Gen. Stat. 2538), and the authorities cited in appellant's brief are not applicable to this case. Rule 27, of the district court, was adopted to prevent disputes as to what agreements had been entered into, where one party was insisting upon the enforcement of such agreement and the other party was denying that any such agreement had been made, and was never intended to apply to a case like this.

V.   The exercise of the judicial discretion will not be reviewed by the appellate court, except in cases where there has been a clear and gross abuse of the power. (*Rowland* v. *Kreyenhagen,* 18 Cal. 455; *Howe* v. *Independence etc. Co.,* 29 Cal. 73; *Francis* v. *Cox,* 33 Cal. 323; *Chamberlin* v. *County of Del Norte,* 77 Cal. 150.)

By the Court, HAWLEY, C. J.:

This appeal is taken from an order of the district court granting defendants' motion to set aside the default of said defendants. The proceedings do not in any manner affect the Eureka County Bank, but relate to all the other defendants, viz.: R. Sadler, John Torre, Charles Barbieri, and the Nevada Stage and Transportation Company. The allegations of the complaint in this action are that the plaintiff is the owner of, and entitled to the possession of, certain designated personal property, formerly "used by one W. J. Townshend in connection with the stage line and stage business of the United States mail route between Eureka and Pioche;" that defendants unlawfully took, kept, and withheld the property from plaintiff, and converted the same to their own use; that the value of said property is six thousand two hundred dollars; and the prayer is for a judgment for said sum. The complaint was filed May 9, 1887, and on the seventeenth of said month the defendants, by Baker & Wines, their attorneys, filed a general demurrer to the complaint. On the fifteenth of July, 1887, the parties appeared in open court, and by consent it was ordered that the demurrer be overruled, and defendants were given ten days in which to file an answer. No further steps were taken in the case until the first of May, 1888, when Henry Rives, attorney for plaintiff,

applied for and obtained a default against all the defendants except the Eureka County Bank, and a judgment by default was entered by the clerk against them, and each of them, for four thousand two hundred dollars. On the fifth of June, 1888, plaintiff assigned said judgment to Jeremiah Ahern, and on the same day he served a notice upon Baker & Wines, attorneys for defendants, and Henry Rives, attorney for plaintiff, that said Henry Rives was no longer authorized to act for him in said cause, "and he is hereby discharged from further authority in connection with the said case," and after service thereof filed said notice with the clerk. On the nineteenth of June, 1888, the defendants served and filed a notice of motion "for an order setting aside, vacating and annulling" said default, and for an order permitting defendants to file an answer, and stating that said application would be made "upon the ground and for the reason that such default was taken and entered against them through their mistake, inadvertence, surprise and excusable neglect," and upon the further ground that it was taken against them "in contravention of an express agreement and understanding had with said plaintiff, that no default, judgment or other proceedings should be had or taken against them." The cause came up for hearing on the twenty-seventh of June. The defendants offered in evidence the affidavits of Sadler, Torre and Wines, and the plaintiff "objected to the introduction or consideration of all portions of said affidavits which relate to any promise, understanding or agreement between the parties or attorneys concerning any of the proceedings in this action, upon the ground that said promise, agreement or understanding is not in writing, filed with the clerk, or entered upon the minutes of the court." On the twenty-sixth day of December, 1888, to which date the matter had from time to time been continued, and the affidavits submitted subject to the objections, the plaintiff moved to strike out all the testimony previously objected to, on the ground that the same "was not in writing," and is incompetent and immaterial. The decision was reserved until the twenty-second day of March, 1889, when the court overruled plaintiff's motion and granted defendants' motion to set aside the default.

From the affidavits referred to, and other testimony offered at the hearing, it appears: That the action was brought by

plaintiff as the agent and trustee of defendants, and for their use and benefit, for the alleged purpose of protecting their title to the property. That the circumstances which led to the commencement of the action in his name were that in March, 1887, W. J. Townshend, while running the stage line, became insolvent, and made an assignment of all his property, real and personal, to the Eureka County Bank. That the defendants Sadler and Torre were sureties upon Townshend's bond to the government of the United States for the safe and regular transportation of the mails from Eureka to Pioche. That said Townshend was also indebted to defendants Sadler, Torre, and Barbieri. That in order to protect their interests they purchased the claim of the bank, and took possession of said property; that on the twelfth day of March they executed an agreement with W. J. Townshend, wherein they covenanted and agreed, in consideration of the assignments, as follows: "That immediately upon the receipt by us of all moneys which we have agreed to pay said Eureka County Bank, and all money now due us from W. J. Townshend, together with all which we may hereafter have to pay out in order to conduct said stage line, and upon our being secured from loss by reason of our being sureties upon the mail contract bonds of said W. J. Townshend, we will transfer and set over unto said Townshend, or his order, all of said property connected with said lines which we may acquire in connection with the conduct of said lines, and which we may charge as having been necessarily purchased in the conducting of said lines and business. It is also understood and agreed that in case we have to pay interest, and any money, to the Utah, Nevada & California Stage Company in order to carry on said stage lines or to retain possession of the property hereinbefore mentioned as having been transferred to us, this agreement to reconvey shall not become operative until such interest and payment to said Utah, Nevada & California Stage Company shall be repaid to us." That at this time Townshend was indebted to the Utah, Nevada & California Stage Company, as it claimed, in the sum of two thousand dollars, (Townshend claimed the amount to be less,) and said corporation then held the legal title to the property. That thereafter, and on the same day, the defendants Sadler, Torre, and Barbieri and the plaintiff, Haley, formed the corporation defendant herein. That Sadler was elected president, and Haley secretary, of

said corporation, and the defendants Sadler, Torre, and Barbieri transferred and assigned their interest in the property to this corporation. That the defendants, in May, 1887, purchased from the Utah, Nevada & California Stage Company all its interest in the property for the sum of two thousand dollars. That plaintiff never had any interest or claim whatsoever in or to said property, and never advanced or paid any money therefor. That at the time of this purchase the defendants were advised by Henry Rives, their attorney in that behalf, "that it would be conducive to their best interests to have the legal title to said property taken in the name of some other person, who would control it in their interests," and to have such person institute an action against the defendants and W. J. Townshend, "for the purpose of quieting title to said property," and vesting a perfect title in the defendants. That after consulting with the plaintiff, who "was at that time, and had been for years, the confidential friend and adviser" of the defendant Sadler, he agreed to take the legal title to said property in his own name, and to institute such an action as might be advised by the said Henry Rives as necessary to accomplish the desired object, and to pursue such a course, and take such steps in regard thereto, as would best promote and subserve the interests of the defendants in said action. That defendants relied upon the promises and good faith of the plaintiff to conduct said suit in their interest, and at the conclusion of said litigation to reconvey said property to them. That the defendants engaged the attorney for the plaintiff, and assumed and became responsible for his compensation, and paid all the costs in this action. That the default and judgment taken by the plaintiff without their consent and the assignment of the judgment "is the grossest fraud upon them, and will work irreparable mischief and wrong." That since the entry of judgment and the assignment thereof, the plaintiff has assumed an attitude of hostility to the defendant Sadler, and is now his open and avowed enemy, and has attempted, and is now attempting, by reason of their former relations of trust and confidence, to secure an unfair advantage over Sadler and his co-defendants.

The defendant Sadler, in his affidavit, "states that it was by reason of the agreement upon the part of plaintiff that said action was entirely friendly, and in the interest of this affiant.

and the said Torre and Barbieri, and for the purpose and only for the purpose of protecting them, and each of them, in the title to the property described in the complaint, that the same was brought and prosecuted; that that was and is the only reason that this affiant did not answer the plaintiff's complaint, presuming and having the right to presume, that the plaintiff was acting *bona fide,* * * * and would not do or suffer to be done any act or thing that would be hostile to the interests of this affiant, or either of the defendants." That "the said plaintiff, or the said J. Ahern, never had, nor have they now any interest, property or claim of any kind, either legal or equitable, in or to the property described in the complaint, except the interest vested in the plaintiff by the acts of these defendants."

Sadler, Torre and their attorney, Wines, make the usual affidavit of merits. J. L. Wines states that "either in the month of February or March, and prior to the time the judgment was entered in the above action, he, in company with John Torre, went to the office of Henry Rives, the then attorney of record for the plaintiff herein, for the express purpose of having an understanding with said Rives concerning said action. That in a conversation with said Rives, at said time, affiant said to Rives: 'We would like to have some understanding about that case;' meaning the case or action above entitled. That said Rives then replied in substance: 'You need not give yourself any uneasiness about the matter. We do not intend to take any judgment against Torre and Barbieri. We don't want any judgment against them'—and finally said, as affiant turned to go away: 'If any steps are ever taken, I will let you know; and, if I was in your place, I would not make any costs in the case.'" This witness further states that he entirely relied upon the statements of said Rives, and paid no further attention to the case, "and that but for such statements, and but for such reliance upon them, he would have at once filed, or caused to be filed, an answer in said cause in behalf of said John Torre and Charles Barbieri." Torre, in his affidavit, corroborates the statement of the witness Wines.

Henry Rives, on behalf of plaintiff, testified as follows: "I don't remember having any such conversation with Wines as he swears to in his affidavit, about not going to take judgment

against Torre and Barbieri. I would have recollected such a conversation, if it had occurred. I won't say it did not occur, or to the contrary; but I do not remember such a conversation with Wines at all; but I know Torre was always anxious about the case." The plaintiff testified in his own behalf that there never was any agreement between him and either of the defendants "that no judgment should be taken in this case;" that he paid $2,000 for the property, in three notes, signed by himself, Sadler, and Jackson; that "those notes were subsequently taken up, and others substituted in their place," without his consent; that he did not pay the notes that were substituted for the ones he signed; that he did not agree at the time he bought the property, or at any time, to manage or control this property, or any judgment he might obtain thereon, according to the direction of defendants, or either of them; that on the other hand, he told the defendant Sadler that when he got possession of the property he would do with it as he did with his own. Both plaintiff and Ahern testify that the assignment of the judgment was made for a valuable consideration.

1. The questions presented by this appeal must be determined and disposed of without any reference to the assignment of the judgment. If the defendants, upon the showing made, were entitled to have the default and judgment set aside as against the plaintiff, the order appealed from should be affirmed, regardless of any question touching the validity, force or effect of the transfer of the judgment.

2. Appellant contends that the testimony clearly shows that this action was instituted by the defendants, for the sole purpose of defrauding Townshend and his creditors of their legal and equitable rights, and that such fraud on their part deprives them of any relief in a court of justice, under the rules announced by this court in *Peterson* v. *Brown,* 17 Nev. 172, and that upon this ground, and for this reason, the court erred in setting aside the default. On the other hand the defendants testify that the suit was not brought for any dishonest or fraudulant purpose. Their testimony, however, is inconsistent and contradictory. They say the suit was brought to quiet title to the property; yet such is not the character of the action. They say it was intended to shut Townshend out; yet Townshend was not made a party to the suit, and would not be bound by any judgment that might be rendered therein. They say the

suit was brought for an honest purpose, yet fail to show how they could in any manner have been benefited by the suit. The attorney who brought the suit and who was employed by defendants for that purpose, testified that the suit was brought to compel Townshend to show what good defense, if any, he had, or to relinquish any claim he might have; that he "expected to quiet title against the Utah & Nevada Stage Company, Townshend, and all other possible claimants;" and that he never made Townshend a party, because he knew that Townshend "had sold out." The real object of the suit, if it was an honest one, is a mystery which is not satisfactorily explained. But, under the peculiar circumstances of this case, we are of opinion that the order of the district court should not be reversed upon the ground that the suit was instituted for a fraudulent purpose. The facts disclosed by the record are however, of such a nature as to convince us that the defendants are not in a position to complain of the entry of the default, unless they had the right to rely upon the verbal stipulations. They instituted the suit against themselves, for the purpose of securing a judgment. They employed counsel, paid all the court fees, and for a time, at least, directed and controlled the proceedings. The attorney for plaintiff, whom they employed, testified that he first took a default in May or June, 1887, and then, at request of Wines, consented to open default; that after such default was opened the answer of the Eureka Bank was put in; that he knew of no reason for pressing it, and he let it run one year; that he had conversations with Haley, Sadler, and Torre about the case generally; that they expressed a desire to have the matter terminated, "and I told clerk to enter judgment. Torre said, 'I want this done with,' so I did what I thought was satisfactory to all parties, and had default entered and judgment taken. * * * I have always considered that the case was understood by the parties as having to be carried to a determination, and knew we could not quiet title without a judgment; and the reason why I let default run so long was, I knew we were entitled to it at any time, and that the parties were better off without than with it." They cannot, independent of the verbal stipulation, claim that they were surprised at the entry of the default. If they desired that no default should be taken against them, why did they voluntarily withdraw their demurrer? Having asked for only ten days to

file an answer, why was it not prepared and filed within that time? They were not prevented from so doing by any act of plaintiff. What answer could they have interposed to a suit instituted at their request and for their benefit, with the understanding that it should be prosecuted to final judgment? If they did not wish a default to be taken against them, they were guilty of gross negligence in leaving the case for nearly a year in a condition where a default might at any time be taken. It is apparent that the reasons stated in defendants' affidavits, and in their testimony, for the delay in filing an answer, do not make out a case of "mistake, inadvertence, surprise, or excusable neglect," within the meaning and intent of the statute, unless force and effect is to be given to the verbal stipulation. They were careless and negligent in leaving the case to be managed on both sides by one attorney. Although the suit, at the time of its commencement, was a friendly one, they ought to have known that it might at any time become difficult to so conduct it as to please both sides. In the excitement of litigation, misunderstandings are liable to arise, even between friends; and no case, however friendly the parties may be, should ever be left in the condition this was, unless it was intended that a default might be taken. They should have placed their defense, if any they had, in the hands of an attorney who was not employed to represent the plaintiff. They must have known that the plaintiff's attorney could not have filed an answer in their behalf, and that he could not act for both sides, unless the judgment was to be taken by default. Litigants in courts of justice ought to know that an attorney cannot professionally act for both plaintiff and defendant. Neither party has any right to rely solely upon the attorney of the other party for a protection of their interests. Each party ought to rely upon themselves, and employ their own attorney. In *Snipes* v. *Jones*, 59 Ind. 253, one of the defendants went to the plaintiff's attorney and was advised by him that "it would be useless to employ counsel or make appearance in said suit, as the plaintiff asked no personal judgment against him." He relied upon this promise, and made no appearance, although he knew that the action was of such a character that certain of the defendants were entitled to equitable relief against him upon a counter claim. Judgment was taken by default, and the equitable relief was granted. The defendant moved to open the default,

and for leave to answer. The supreme court said the facts presented "a case of gross carelessness and inexcusable neglect;" that "the attorney of the plaintiff was not the proper person for him to consult as to the rights of the defendants between themselves. He should have procured an independent attorney to represent his interest in this particular.    *    *    *    Let men learn to properly attend to their own business.    *    *    *    even if it involves the necessity of paying a fee to an attorney. It were wiser to pay a fee to prevent a judgment, than for fruitless efforts to vacate it."

The alleged bad faith and fraud of plaintiff, subsequent to the entry of the default, in assigning the judgment to Ahern, instead of keeping his promise "that, at the conclusion of said litigation, he would reconvey his interests to the defendants," might furnish grounds for equitable relief, in proper proceedings instituted for that purpose; but it does not constitute any ground for relief upon this appeal. The motion that was made in this case is based upon the provisions of section sixty-eight of the civil practice act, (Gen. Stat. 3090,) which only authorizes the court to grant the relief asked for upon the ground of "mistake, inadvertence, surprise, or excusable neglect." (*People* v. *O'Connell*, 23 Cal. 282; *Gerish* v. *Johnson*, 5 Minn. 26; *State* v. *District Court*, 16 Nev. 372.)

3. Did the court err in admitting the testimony of the oral agreement with plaintiff's attorney? The statute provides that "an attorney and counselor shall have authority    *    *    *    to bind his client, in any of the steps of an action or proceeding, by his agreement filed with the clerk, or entered upon the minutes of the court. and not otherwise." (Gen. Stat. 2538.) In *Borkheim* v. *North British etc. Ins. Co.*, 38 Cal. 628, the supreme court, in referring to the same provision in the statutes of California, said: "It declares such agreements null and void, unless they are in writing and filed with the clerk, or have been entered in the minutes of the court. Of such agreements, therefore, there can be no specific performance. To allow the court to enforce them, as was done in this case, against the will or without the consent of the parties, is to allow the court to work the precise mischief which the statute was designed to prevent. Instead of being nullified in that way, the statute ought to be strictly adhered to, for it is the dictation of wisdom. Without it the court would be frequently annoyed by disputes between counsel

422          HALEY *v.* EUREKA CO. BANK.          [Supt. Ct.

Opinion of the Court—Hawley, C. J.

concerning their agreements, and thus forced to try innumerable side issues, more perplexing than the case itself, attended, also, with delay to its business and with detriment to the public service." In *Merritt* v. *Wilcox*, 52 Cal. 241, the court affirmed the principles above announced, and said: "The wisdom of these views, and the absolute necessity of their enforcement in practice, is strikingly illustrated by the circumstances of the present case, in which      *      *      *      the making of the alleged stipulation is positively supported in some eleven affidavits upon one side, and directly denied in an equal number on the other. Among these are found the opposing affidavits of the respective counsel, each of deservedly high professional reputation, and to neither of whom could any unfairness of purpose be justly imputed. An honest misunderstanding between those gentlemen has undoubtedly occurred. The scope and effect of what one of them said, constituting the supposed stipulation, has been forgotten by him, or been misapprehended by the other. It is to avoid mistakes such as these, and which are otherwise so likely to occur in the course of a trial, that the statute has been enacted." We cite these cases relating to the power of an attorney to bind his client, not only to show the object and purpose of the statute, but also to show that the courts have always enforced its provisions in this respect; that the courts have no discretion in the premises, and no authority to give any weight to oral agreements concerning "any of the steps of an action or proceeding." This rule of construction has been enforced in cases of extreme hardship, where the party relying upon the oral promise of the opposing attorney was otherwise wholly without fault. (*Goben* v. *Goldsberry*, 72 Ind. 46.) Appellants, in support of their objections, specially rely upon the provisions contained in rule twenty-seven of the district court. This rule is supplemental to the statutory provisions, and reads as follows: "No agreement or stipulation between the parties in a cause, or their attorneys, in respect to the proceedings therein, will be regarded, unless the same shall be entered in the minutes, in the form of an order, by consent, or unless the same shall be in writing, subscribed by the party against whom the same shall be alleged, or by his attorney or counsel." (19 Nev. 29. Rule 27.) The authorities cited by appellant are to the effect that the rules adopted by the courts for their government are binding upon

the parties; that there exists no discretion in the courts to dispense with them at pleasure; that such rules being necessary to the due and proper administration of justice, must be considered and treated as an established practice, prescribing a law to which the court itself must conform; that such rules have the same force and effect as the statutes, and cannot be dispensed with or disregarded. The decisions of this court, in so far as the questions were involved, tend in the same general direction, and are substantially to the same effect. (*Caples* v. *Central Pac. R. R. Co.*, 6 Nev. 275; *Lightle* v. *Ivancovich*, 10 Nev. 42.) The courts may rescind, modify, or repeal their rules, or, in establishing them, may reserve the exercise of discretion; but where there is no such reservation in the rules, and they remain in full force, and are not in any respect repugnant to the provisions of the statute, they have, as before stated, the force and effect of law, and are equally binding upon the court and litigants, and should be applied and enforced in all cases, and upon all questions coming within their provisions. "The rule of our supreme court has long been to disregard all admissions or agreements made out of court by parties, or their attorneys, in respect to the conducting of the suit, and not reduced to writing, and subscribed by the persons making it. The policy of the rule is obvious. It points to imminent danger of making the rights of parties in the conducting of a suit depend upon the memory, the truthfulness, or the accuracy of an opponent, whose feelings or passions are excited by self-interest and the excitement of litigation. The principle will apply with greater force against permitting a party to rid himself of a decree, regularly obtained, by his statement of the admission of an adversary, made months previously, resting solely in his memory." (*Marsh* v. *Lasher*, 13 N. J. Eq. 255.)

Respondents contend that the statute and rule relied upon by appellant can only be applied when it is sought to have the oral agreement specifically enforced, and that, inasmuch as they are not claiming that the plaintiff, under the verbal stipulation, could "never take a judgment," they have no application to this case. It is evident that the action of the court amounted to an enforcement of the oral stipulation. If the views of counsel were sustained, it would prevent a judgment being taken by default; for, as long as the case was held subject to the stipulation, and if plaintiff could be bound by it, a default could

not be taken, and the effect would be to abrogate, annul, and destroy the force and beneficial effect and purpose of the rule of court. It was the duty of the district judge to enforce the rule, and he erred in overruling the objections to the testimony in relation to the verbal stipulation. It is not a case where the question was left to his discretion. There was a positive statute, a rule prescribed and adopted by this court for the government of the district court which could not be disregarded. The rule in question applies to all cases. There is no exception, no qualification, no discretion. The defendants were guilty of negligence in placing any reliance upon the oral agreement. They knew that such an agreement did not, under the statute and rule of court, have any binding effect. It was an easy thing for them to have required plaintiff's attorney to sign a written stipulation, giving further time to file an answer. Then by filing this stipulation, they could have rested in perfect security. They knew that, in the condition in which the litigation was, the plaintiff had the legal right to at any time apply to the clerk for a default. If his attorney refused to act, he could, as was done in *Goben* v. *Goldsberry, supra,* have discharged him, and employed another attorney, and instructed him to have the default taken. The defendants allowed the case to remain subject at any time to the order of the plaintiff, when, by the exercise of ordinary diligence, they could have readily avoided the entry of default. The shield furnished by the law was ample for the protection of their rights; and, if they did not want a default to be taken, they should have availed themselves of its clear, wise and beneficial provisions, instead of trusting to the uncertain memory of counsel, or the instability of plaintiff's professed friendship towards one of the defendants. In the application and enforcement of the statutory provisions, it has been held that a party is not authorized to rely upon an oral agreement of the opposing attorney for a new trial upon the ground of surprise; that it is a want of diligence to rely upon a verbal stipulation which is not binding. (*Patterson* v. *Ely,* 19 Cal. 35.) In *Reese* v. *Mahoney,* 21 Cal. 308, the district court declined to open a default alleged to have been taken in violation of an oral agreement. Field, J., in delivering the opinion of the supreme court, affirming the action of the district court, said: "Verbal stipulations, with reference to proceedings in pending actions,

cannot be regarded, except so far as they are admitted by the parties against whom they are sought to be enforced, This rule is necessary to avoid endless disputes." There are cases where the courts have opened the default when it was taken in violation of oral stipulations of counsel; but in such cases no objections were taken to the admissibility of the evidence of the oral stipulation. In every case, so far as our examination has extended, where the question of the necessity of a written stipulation, under statutory provisions or rules of court requiring the same to be in writing has been decided, the courts have held that the oral stipulations cannot be relied upon. But, whatever the decisions in other states may be, our duty is made clear and plain by the express and positive language of Rule 27, above quoted. It is true that rules are sometimes adopted by courts, for their own convenience, which may be enforced or set aside at their own will and pleasure, as deemed meet and proper under the circumstances of each case. " Such rules are mere engines to promote convenience in business, and when, from any peculiarity, they require to be suspended or waived, in order to promote justice, the power which made them can and ought to suspend them." (*Wallace* v. *Clark,* 3 Woodb. & M. 362.) But the rule under consideration is not of such a character. The methods pursued in preparing and adopting the rules clearly show that they were intended to be supplemental to the provisions of the statute, and that they should be considered, not only for the guidance of attorneys and convenience of the courts, but also as rules for the government of all proceedings in the district court. They were carefully prepared and well considered. A committee consisting of five attorneys was appointed by the district judges to draft the rules. The rules recommended by this committee were by the district judges " adopted as the rules of practice of the district court of the state of Nevada," and afterwards the rules were adopted by this court and ordered published, in pursuance of the provisions of the statute authorizing the supreme court, to "make rules, not inconsistent with the constitution and laws of the state, for its own government, and the government of the district courts." (Gen. Stat. 3612.) Such rules, therefore, have the same force and effect as if they were incorporated in the statutory provisions.

The supreme court of the United States, in *McDonald* v. *Smalley*, 1 Pet. 624, said, " that the rules which govern the practice of the circuit courts in chancery have been prescribed by this court, and ought to be observed." In *Seymour* v. *Phillips*, the circuit judge said: " A rule established by the supreme court of the United States in pursuance of law becomes, to all intents and purposes, of the same effect as the law itself." (7 Biss. 462. See, also, *Jenkins* v. *Greenwald*, 1 Bond, 134; *Wallace* v. *Clark*, *supra*.) As a general rule, the question of opening a default is left to the discretion of the court. This discretion, however, is a legal discretion, and cannot be sustained where there is no testimony to justify it. The order of the district court is reversed.