OPINION OF THE COURT
Leon A. Beerman, J.
Defendant moves for an order granting summary judgment and dismissing the plaintiffs’ complaint upon the grounds that it fails to state a cause of action as the agreements asserted by plaintiffs in the complaint are void, illegal and contrary to public policy.
Plaintiffs oppose the application contending that the agreements between plaintiffs and defendant are valid and legal, and alternatively, even if the agreements are illegal and void, that plaintiffs are entitled to damages for unjust enrichment.
Plaintiffs’ first cause of action alleges that in or about January, 1973, plaintiffs, technicians in EEG and ECHO testing, and *136 defendant, a licensed physician, entered into an oral agreement whereby the parties were to contribute jointly to the purchase of EEG and ECHO testing machines. That plaintiffs were to administer the tests and that the parties would divide, on a 50-50 basis, money received for all tests given by plaintiffs as well as expenses for maintenance of the machines and office facilities. The complaint further alleges that on January 20, 1976, the agreement was modified, reduced to writing, and executed by the parties. Said written agreement is alleged to provide as follows:
“agreement between: Dr. emil c. zuckermann, m.d. (the first party), and Mr. & Mrs. Joseph katz, (the second party):
“This agreement originated with the purchase of medical equipment in the form of EEG and ECHO machines with equal (50%-50%) contribution from both parties mentioned above.
“It is the responsibility of the second party to perform all requested tests for EEG and ECHO in:
“1) Dr. Zuckermann offices daily office hours.
“2) Hospitals and Health-Related facilities (when is required).
“It is the responsibility of the first party to submit monthly statements with all payments received for EEG and ECHO tests to the second party.
“All payments for the above tests will be shared each month equally (50%-50%) between the first party and the second party.
“It is the responsibility of the second party to pay each month to the first party: $1100.00 as contribution to general office expenses, plus half (50%) of all charges for supplies, repairs of accessories for the use of EEG and ECHO machines.
“This agreement is to be in effect for five years beginning with January 1, 1978.
“Termination, or any changes to this agreement must be by written notification and signed by both parties two months in advance.”
Plaintiffs allege that defendant breached the agreement in that no monthly accounting statements were provided and that defendant failed to pay plaintiffs their proportionate share of the net profits thereunder.
The second and third causes of action also allege a breach of contract based upon the agreement between the parties and request money damages and an accounting. The fourth cause of action proposes an unjust enrichment.
*137 Defendant, in his moving papers, unequivocally denies ever entering into a written agreement, although he does concede that the parties entered into the oral agreement alleged by plaintiffs. In that regard, defendant contends that plaintiffs were provided monthly accounting statements and paid their proportionate share of the profits. Notwithstanding this contention, defendant posits that the complaint must be dismissed due to the fact that plaintiffs are unlicensed technicians and therefore the agreement constituted an illegal fee-splitting arrangement which is void and unenforceable as a matter of law.
Section 6509-a of the Education Law which is entitled “Additional definition of professional misconduct; limited application”, and applicable to doctors, describes as professional misconduct “directly or indirectly * * * participating] in the division [or] * * * splitting * * * of a fee for * * * the furnishing of professional care, or service”.
Additionally, the Board of Regents of the State of New York has established certain rules which define unprofessional conduct in the practice of any profession licensed or certified pursuant to title VIII of the Education Law.
With respect to the instant case unprofessional conduct includes: “(4) permitting any person to share in the fees for professional services, other than: a partner, employee, associate in a professional firm or corporation, professional subcontractor or consultant authorized to practice the same profession, or a legally authorized trainee practicing under the supervision of a licensed practitioner. This prohibition shall include any arrangement or agreement whereby the amount received in payment for furnishing space, facilities, equipment or personnel services used by a professional licensee constitutes a percentage of, or is otherwise dependent upon, the income or receipts of the licensee from such practice” (8 NYCRR 29.1 [a] [4]).
Obviously, these prohibitions are pointedly directed against the professional. It defines the conduct of the individual licensed in a specific profession and the manner in which the individual is to administer his skill with its concomitant emoluments. The guidance and restrictions set out by these regulations establish the professional standards applicable to its members.
The defendant contends that these precepts have the same force and effect upon the general public with equal significant consequences to both professional as well as nonprofessional.
As discussed by Justice Pino, in the recently decided case of Baliotti v Walkes (NYLJ, April 27, 1984, p 15, col 3), the fact that *138 the above-mentioned provisions were enacted in 1977, after the date of the agreement, does not make the provisions inapplicable.
“As the Court of Appeals specifically stated in Matter of Bell v. Board of Regents [295 NY 101], at 111:
“ ‘It seems to us that there is one course of conduct which in each and every profession is known as a matter of common knowledge to be improper and unprofessional. That is conduct by which, after a professional man has been licensed by the State, he enters into a partnership in his professional work with a layman, by the terms of which he divides with the latter, on a percentage basis, payment made by client or patient for professional services rendered.’ ” (Baliotti v Walkes, supra.)
It must be noted that the situation at bar is somewhat different than the facts presented in Baliotti (supra). Therein, plaintiffs, who were not physicians, contributed their building to a corporation, BLW, formed by plaintiffs and the defendant doctors. In exchange for their respective contributions, plaintiffs received a 50% and each doctor a 25% ownership interest in BLW. The newly formed corporation, BLW, then leased the premises to a partnership, known as OBGYN, which was formed by the defendant doctors. BLW entered into a management agreement whereby BLW agreed to provide certain nonmedical services to OBGYN in exchange for a percentage of OBGYN’s gross receipts. Said agreement, which in effect, provided that a business corporation was to share on a percentage basis in the professional fees earned by doctors, was found to be fee splitting and the cause of actions based upon the agreement dismissed.
At bar, plaintiffs did not share in the entire proceeds of the doctor’s professional practice. Rather, they received a percentage of the fee charged by the doctor for the services that they had performed on the patient. However, notwithstanding the fact that plaintiffs performed valuable services, their agreement with Dr. Zuckermann, whether written or oral, it does constitute fee splitting and as such, the contract is void and unenforceable.
However, adopting the reasoning of Justice Pino, plaintiffs herein are not without a remedy. (Baliotti v Walkes, supra.) “Under principles of equity, ‘a person shall not be allowed to enrich himself unjustly at the expense of another’ (Pink v. Title Guaranty & Trust Co., 274 N.Y. 167, 173). ‘Recoveries are not had in such cases upon the basis of express contract, which is tainted with illegality; but upon an implied contract founded upon the moral obligation resting upon the defendant to account for the [value of the] money or property [or services] received’ *139 (Tracy v. Talmage, 14 N.Y. 162,191).” (Baliotti v Walkes, NYLJ, April 27, 1984, p 15, cols 3, 4, supra.)
Plaintiffs contend that the general rule expressed in United Calendar Mfg. Corp. v Huang (94 AD2d 176), that the court will not aid either party to an illegal contract, is inapplicable to the facts at bar. Instead plaintiffs posit that an exception to the general rule should be applied due to the fact that plaintiffs were not engaged in any wrongdoing or illegal activity and the contract in issue was not criminal in nature (malum in se), but merely prohibited by law (malum rohibitum). “Illegal contracts are generally unenforceable. Where contracts which violate statutory provisions are merely malum prohibitum, the general rule does not always apply. If the statute does not provide expressly that its violation will deprive the parties of their right to sue on the contract, and the denial of relief is wholly out of proportion to the requirements of public policy or appropriate individual punishment, the right to recover will not be denied” (Rosasco Creameries v Cohen, 276 NY 274, 278; see, also, Costello Assoc. v Standard Metals Corp., 121 Misc 2d 282, 288, 290).
In distinguishing Huang (supra), plaintiffs cite the fact that the court’s ratio decidendi was based upon plaintiffs coming into court with unclean hands (i.e., they were in violation of State law for having their own patients when they were not licensed to practice medicine). “To have granted such relief would have sanctioned the unlawful practice of medicine by the plaintiff. Thus, the court did not extend any aid to the plaintiff and left the parties, all of whom were equally guilty of illegal conduct ‘where their own acts have placed them’ (United Calendar Mfg. Co. v Huang, supra, at 180).” (Baliotti v Walkes, supra, p 15, col 4.) It must be noted that in the instant case although plaintiffs were unlicensed, there is no licensing requirement in the State of New York for EEG or ECHO technicians.
Under these facts and circumstances the court will not permit the doctor to disavow his obligations based upon his own wrongdoing where he clearly has received valuable services. As a matter of fact, the defendant has received monetary compensation for the services performed exclusively by the plaintiff. The doctor, who apparently entered into an agreement, whether written or oral, not knowing of its illegality, is charged with a higher duty of knowledge and should not be permitted to assert the excuse of ignorance of the law to avoid his obligations.
Certainly if the doctor, to whom the statute pertains directly, is unaware of the illegality of the agreement, plaintiffs, unlicensed technicians, will not be charged with such knowledge.
*140 Accordingly, defendant’s motion for summary judgment is granted with respect to plaintiffs’ first, second and third causes of action, which are based solely upon the contract. Defendant’s motion for summary judgment on plaintiffs’ fourth cause of action is denied.