OPINION OF THE COURT
Herman Cahn, J.
Plaintiff moves for summary judgment pursuant to CPLR 3212. Defendants cross-move for summary judgment dismissing the complaint.
In a second motion, plaintiff seeks leave to amend the complaint.
In the original complaint, plaintiff Herman Gorman (Gorman) alleges that since 1967 defendant Maurice A. Grodensky (Grodensky) and one David B. LeSchack (LeSchack) were the sole partners in the partnership of LeSchack & Grodensky. Both Grodensky and LeSchack were attorneys practicing law and the partnership was a law firm. This partnership is also a named defendant, as is LeSchack & Grodensky, P. C. The partnership allegedly "maintained and operated a business, known as the 'Collection Division’, engaged in the collection of debts”. It is claimed that in 1967 the parties entered into an agreement which provided that Gorman would be employed as office manager of the Collection Division for as long as the firm existed, in return for which he would receive a salary of *838 $350 per week plus one third of the net profits of the Collection Division. In 1970 when LeSchack died the parties allegedly "amended their agreement to provide for a division of the net profit of the Collection Division with 50% to be paid to plaintiff and 50% to be paid to defendant Grodensky”. In 1972 Grodensky formed a professional corporation known as LeSchack & Grodensky, P. C. Gorman alleges that he performed all of his duties under the agreement for the partnership and later, for the professional corporation, but that defendants breached the agreement by wrongfully terminating his employment and failing to pay the money due him.
The complaint asserts a cause of action for breach of contract for the payments allegedly owed to Gorman. Summary judgment on that claim is sought, with an accounting to determine the precise amount due. Plaintiffs companion motion to amend the complaint seeks to add causes of action for fraud and unjust enrichment. Gorman annexes to his motion papers a copy of the purported initial agreement.
Assuming, for the purposes of this decision only, that it is authentic, an examination of some of its relevant provisions is important in analyzing the legal issues presented. First, the agreement provides that Gorman’s employment was as office manager of the Collection Division and was to continue for as long as the firm of LeSchack & Grodensky, P. C., continued in existence, or, in any event, for a period of five years.
Next, Gorman was to receive a weekly salary of $350 plus, from time to time, a sum equal to one third of the net profit of the Collection Division.
Defendant contends that it is entitled to dismissal of the complaint because, even if the purported contract is genuine, it is essentially an agreement to split attorney’s fees and is therefore against public policy and unenforceable. By the terms of the purported agreement, Gorman, who is not an attorney was to receive a percentage of the net profits from the "Collection Division”. Defendants argue that even if such a division did exist, the profit-sharing arrangement is in violation of the Code of Professional Responsibility’s Disciplinary Rule prohibiting the splitting of legal fees between attorneys and nonattorneys. (Code of Professional Responsibility, DR 3-102.)
DR 3-102, entitled "Dividing Legal Fees with a Non-Lawyer” provides:
"(A) A lawyer or law firm shall not share legal fees with a non-lawyer, except that:
*839 "(1) An agreement by a lawyer with his firm, partner, or associate may provide for the payment of money, over a reasonable period of time after his death, to his estate or to one or more specified persons.
"(2) A lawyer who undertakes to complete unfinished legal business of a deceased lawyer may pay to the estate of the deceased lawyer that proportion of the total compensation which fairly represents the services rendered by the deceased lawyer.
"(3) A lawyer or law firm may include non-lawyer employees in a retirement plan, even though the plan is based in whole or in part on a profit-sharing arrangement.”
The court must first determine whether the subject agreement (assuming its authenticity) is violative of that fee splitting provision: pursuant to the agreement, did the firm "share legal fees with a non-lawyer”? From an examination of the exceptions incorporated into DR 3-102 the nature of the prohibition becomes more clear. The third exception permits the inclusion of nonlawyers in a retirement plan "even though the plan is based in whole or in part on a profit-sharing arrangement.” It would appear, and this court holds, that the essence of "fee splitting” is the sharing of profits on a percentage basis, rather than payment of a fixed compensation or salary. The splitting of fees is prohibited and disfavored by professions other than the legal one as well. (See, Education Law § 6509-a.) It is against the public policy of this State for a licensed professional to "split fees” with an unlicensed person. "[T]here is one course of conduct which in each and every profession is known as a matter of common knowledge to be improper and unprofessional. That is conduct by which, after a professional man has been licensed by the State, he enters into a partnership in his professional work with a layman, by the terms of which he divides with the latter, on a percentage basis, payments made by client or patient for professional services rendered.” (Matter of Bell v Board of Regents, 295 NY 101, 111; emphasis added.)
The subject agreement clearly provides for a percentage of profits to be paid to plaintiff. That such payments were only to be from profits made by the Collection Division does not circumvent the fee-splitting prohibition. Although the collection activity and management of the Collection Division may not, strictly speaking, be the practice of law, division of the profits from the division does constitute sharing of legal fees. *840 (See, Ethics Opns Nassau County Bar Assn 80-3.) Fee splitting in the medical profession was found to exist in United Calendar Mfg. Corp. v Tsung C. Huang (94 AD2d 176), in which plaintiff was a corporation which maintained a building where "medical, dental and professional services” were provided to the public. Plaintiff maintained names and records of patients, hired the professional personnel and provided equipment and office space for their use. Plaintiff argued that this business activity was not the practice of medicine since the doctors were paid directly and plaintiff merely received a percentage of the gross earnings at its premises. The court nevertheless held this to be an illegal fee-splitting arrangement. Similarly, in Baliotti v Walkes (NYLJ, Apr. 27, 1984, p 15, col 3) plaintiffs, nonphysicians, entered into an agreement with two physicians to form a corporation to lease premises and equipment for a medical partnership. Plaintiffs were to contribute the premises and defendants, the physicians, would contribute office and medical equipment; each party would own a certain percentage of the corporation. The lease provided that the corporate lessor was to receive 25% of the gross receipts of the medical partnership beyond $100,000 annually. This, the court held, was also an illegal fee splitting arrangement, even though plaintiff did not perform any medical services.
It is apparent then, that although the agreement here called for Gorman to do work basically of a business nature, rather than of a legal nature, the compensation arrangement was violate of the fee splitting prohibition of DR 3-102.
Because the contract is essentially one to split attorney’s fees, it violates public policy and, is thereby rendered unenforceable. Even assuming the contract’s authenticity, then, the cross motion to dismiss the complaint is granted.
Although the provisions of the Code of Professional Responsibility do not enjoy the status of decisional or statutory law (Matter of Weinstock, 40 NY2d 1; see also, Matter of Rosenthal v Harwood, 35 NY2d 469), they are an explicit expression of the public policy of the State. An agreement made in violation of a code provision ought not be sanctioned by the court, as would be the case if the court were to permit plaintiff to sue on the contract. The court will refuse to aid either party to enforce this alleged contract.
That the defendants may benefit from the court’s refusal to enforce a contract is irrelevant, if enforcement would further a purpose in violation of public policy. (See, United Calendar *841 Mfg. Corp. v Tsung C. Huang, supra, at p 181.) In such a case, the law will not aid either party but will leave them as their acts have placed them. (See, Braunstein v Jason Tarantella, Inc., 87 AD2d 203; United Calendar Mfg. Corp. v Tsung C. Huang, supra; Katz v Zuckermann, 126 Misc 2d 135.)
In their companion motion, plaintiff seeks leave to amend the complaint to add causes of action for fraud and for unjust enrichment. Even though the contract action is dismissed, actions for fraud and unjust enrichment may be viable and leave to amend is therefore, granted.
In two of the cases cited herein, Katz v Zuckermann (supra) and Baliotti v Walkes (supra), the contract was deemed unenforceable, due to fee splitting and the contract action was not permitted. In neither of those cases, however, did the court leave plaintiff without a remedy. Because equitable principles counsel that " 'a person shall not be allowed to enrich himself unjustly at the expense of another’ ” (Pink v Title Guar. & Trust Co., 274 NY 167, 173), the plaintiffs had potential causes of action for unjust enrichment, for the value of services rendered by plaintiffs and received by defendants. That reasoning is equally applicable here. The equities were there, as here, particularly in plaintiff’s favor since the proscriptions were primarily directed at the professional (defendant) rather than the layman. Under these circumstances the court ought not permit defendant, the professional attorney, to "disavow his obligations based upon his own wrongdoing where he clearly has received valuable services.” (Katz v Zuckermann, supra, at p 139.)
The motion for summary judgment is denied. The cross motion to dismiss the complaint is granted to the extent of dismissing the contract cause of action.