654 So.2d 966 (1995)
PRACTICE MANAGEMENT ASSOCIATES, INC., Appellant,
v.
Scott BITET, Appellee. PRACTICE MANAGEMENT ASSOCIATES, INC., Appellant,
v.
Christopher BENOIT, Appellee. PRACTICE MANAGEMENT ASSOCIATES, INC., Appellant,
v.
Ricky J. MARTINO, Appellee. PRACTICE MANAGEMENT ASSOCIATES, INC., Appellant,
v.
Phyllis M. BURGIO, Appellee. PRACTICE MANAGEMENT ASSOCIATES, INC., Appellant,
v.
Richard MATTEO, Appellee.
Nos. 92-00278, 92-01392, 92-01393, 92-01526 and 92-02086.
District Court of Appeal of Florida, Second District.
April 19, 1995.
*967 Julee L. Milham of St. Petersburg Beach, and Melissa Gilkey Mince of Fernandez & Saunders, P.A., Pinellas Park, for appellant.
Jean R. Simons of Simons & Seeley, P.A., Madeira Beach, for appellees.
PER CURIAM.
The appellant, Practice Management Associates, Inc. (PMA), challenges the final summary judgments entered in each of these cases which find its contracts with the appellees null and void on the ground that the contracts require illegal fee-splitting. We consolidate these cases for the purpose of this opinion, and we affirm in part and reverse in part.
In each of these actions, the appellee, a chiropractor licensed and practicing in New York,[1] entered into a contract with PMA entitled "Practice Starter Agreement." PMA, a Florida corporation, maintains its sole office in Clearwater, Florida. All the chiropractors signed the agreement in Illinois, with the exception of Bitet, who signed in Georgia. The contract provides that "[t]he parties agree that the laws of the State of Florida shall govern this contract and any interpretations or construction thereof."
Under the agreement, PMA is to offer advice, education, and counseling to increase the growth and profits of the chiropractic practices. PMA's services include seminars, publications, call-in counseling, and in-person consultations. In return for PMA's services, the chiropractors are obligated to pay PMA 10% of their weekly gross income or a weekly fee of $75, whichever is greater, for twenty-four months.
When the chiropractors defaulted on the weekly payments, PMA brought a two-count action in each case. Count I sought damages for breach of the contract. Count II, in the alternative, was an action in quantum meruit. In each case, the trial court entered summary judgment in favor of the chiropractor on the grounds that the contract was against the public policy of New York because it involved illegal fee-splitting.[2] The court also found that the illegal portion of the contract was not severable and that PMA could not recover under a quantum meruit theory on an illegal contract.
PMA argues that the trial court erred in applying New York law since the contract provides that any disputes arising from the contract are to be resolved by Florida law. Generally, when the parties to a contract have agreed upon the law which will govern their disputes, that law will be applied. Department of Motor Vehicles v. Mercedes-Benz of N. Am., Inc., 408 So.2d 627 (Fla. 2d DCA 1981). The only exception is if the performance of the contracts will cause the chiropractors to violate the laws or regulations governing their profession in the state where they practice. See Thomas v. Ratiner, 462 So.2d 1157 (Fla. 3d DCA 1984), review denied, 472 So.2d 1182 (Fla. 1985). This court has determined that the contract does not violate Florida law. See Practice Management Assocs. v. Gulley, 618 So.2d 259 (Fla. 2d DCA 1993) (agreement does not violate prohibition in subsections 460.413(l), (k), (m), Florida Statutes (1985), against fee-splitting *968 for the referral of patients). Thus, the next step is to determine whether the contracts require prohibited fee-splitting under New York law.
Under section 6509-a of the New York Education Law, a doctor may be guilty of misconduct if the doctor
has directly or indirectly requested, received or participated in the division, transference, assignment, rebate, splitting or refunding of a fee for, or has directly requested, received or profited by means of a credit or other valuable consideration as a commission, discount or gratuity in connection with the furnishing of professional care, or service....
N.Y. Education Law, § 6509-a (McKinney 1985).
The accompanying regulations of the State Education Department, which define unprofessional conduct in the practice of any licensed profession, forbid:
(3) directly or indirectly offering, giving, soliciting, or receiving or agreeing to receive, any fee or other consideration to or from a third party for the referral of a patient or client or in connection with the performance of professional services;
(4) permitting any person to share in the fees of professional services, other than: a partner, employee, associate in a professional firm or corporation, professional subcontractor or consultant authorized to practice in the same profession, or a legally authorized trainee participating under the supervision of a licensed practitioner. This prohibition shall include any arrangement or agreement whereby the amount received in payment for furnishing space, facilities, equipment or personnel services used by a professional licensee constitutes a percentage of, or is otherwise dependent upon, the income of receipts of the licensee from such a practice... .
N.Y. Comp. Codes R. & Regs. tit. 8 § 29.1(b)(3),(4).
Thus, New York law prohibits payment for patient referrals and the sharing of professional fees with anyone other than a partner or associate in the same profession. The regulations specifically prohibit percentage-based compensation with a nonprofessional if the arrangement involves furnishing space, facilities, equipment, or personnel services. See Sachs v. Saloshin, 138 A.D.2d 586, 526 N.Y.S.2d 168 (1988) (by tendering a percentage of patient fees to landlords, dentist violated public policy against fee-splitting); Artache v. Goldin, 133 A.D.2d 596, 519 N.Y.S.2d 702 (1987) (dentist engaged in illegal fee-splitting arrangement with nonprofessional employee who helped in the management and administration of the dentist's practice); Hauptman v. Grand Manor Health Related Facility, Inc., 121 A.D.2d 151, 502 N.Y.S.2d 1012 (1986) (requirement that psychiatrist pay 20% of his fees to medical corporation or be barred from practicing in nursing home is illegal and unethical fee-splitting arrangement); Baliotti v. Walkes, 115 A.D.2d 581, 496 N.Y.S.2d 242 (1985) (management agreement whereby manager was to receive 25% of the doctor's gross receipts was found to be illegal fee-splitting), appeal dismissed, 68 N.Y.2d 664, 505 N.Y.S.2d 1028, 496 N.E.2d 241 (1986); Katz v. Zuckermann, 126 Misc.2d 135, 481 N.Y.S.2d 271 (Sup.Ct. 1984) (agreement between doctor and two medical technicians whereby parties were to contribute jointly to the purchase and maintenance of two testing machines and to divide the money received for all tests given constituted illegal fee-splitting), aff'd, 119 A.D.2d 732, 501 N.Y.S.2d 144 (1986); Toffler v. Pokorny, 157 Misc.2d 703, 598 N.Y.S.2d 445 (Sup.Ct. 1993) (dentist who paid a percentage of gross receipts from patients in exchange for office space was engaged in illegal fee-splitting).
The regulations, in subsection (4), state that the prohibition "shall include any arrangement or agreement whereby the amount received in payment for furnishing space, facilities, equipment or personnel services" constitutes a percentage of the income from the practice. N.Y.Comp.Codes & Regs. tit. 8 § 29.1(b)(4). This language indicates that the list is not exclusive. The Practice Starter Agreement requires the chiropractor to give PMA a percentage of weekly gross income or a minimum weekly set fee, whichever is greater. This percentage-based arrangement is no different than the conduct *969 specifically proscribed by the regulation. Therefore, we hold that PMA's contract violates this regulation.
PMA contends that if the term of the contract requiring payment of a percentage of income violates the public policy of the state, the term should be severed and the remainder of the contract enforced. We agree with the chiropractors that the offending portions of the contract are not severable. The percentage-based payment goes to the essence of the contract. See Wilderness Country Club Partnership Ltd. v. Groves, 458 So.2d 769 (Fla. 2d DCA 1984) (severing price term eliminates essence of parties' agreement).
However, the prohibitions in the statute and the regulations "are pointed directly at the professional." Katz, 481 N.Y.S.2d at 273. Therefore, although the professional is prohibited from benefiting from a fee-splitting contract, the nonprofessional may be entitled to compensation for his services under an unjust enrichment theory. Katz, 501 N.Y.S.2d at 145; Artache, 519 N.Y.S.2d. at 705. Since PMA included a count in its complaint for quantum meruit, it may still be able to recover the value of the services it has rendered to the chiropractors. See Robinson's, Inc. v. Short, 146 So.2d 108 (Fla. 1st DCA 1962) (contractor was entitled to quantum meruit recovery after performing under a contract which was found to be invalid), cert. denied, 152 So.2d 170 and 155 So.2d 548 (Fla. 1963).
Accordingly, we affirm the summary judgment as to count I (breach of contract) since the trial court correctly found that the agreement violates the public policy of New York. We reverse the summary judgment as to count II (quantum meruit), and remand for further proceedings consistent with this opinion.
Affirmed in part, reversed in part and remanded.
DANAHY, A.C.J., and CAMPBELL and PATTERSON, JJ., concur.
NOTES
[1] In case number 92-01392, Christopher Benoit was still a student at the National College of Chiropractic in Illinois at the time the action was filed. An additional issue in his case is whether he anticipatorily breached the contract.
[2] In Benoit's case, the trial court also found that the contract violated the public policy of Illinois. This court has already held that the contract does not violate Illinois law or public policy. Practice Management Assocs. v. Orman, 614 So.2d 1135 (Fla. 2d DCA 1993).