THOMAS D. SHIMRAK, INDIVIDUALLY AND DBA SHIMRAK INVESTIGATIONS, APPELLANTS, v. EVA GARCIA-MENDOZA; EVA GARCIA-MENDOZA, CHTD., FKA MENDOZA-GARCIA-MENDOZA, CHTD., RESPONDENTS.

No. 25100

THOMAS D. SHIMRAK, INDIVIDUALLY AND DBA SHIMRAK INVESTIGATIONS, APPELLANTS, v. EVA GARCIA-MENDOZA; EVA GARCIA-MENDOZA, CHTD., FKA MENDOZA-GARCIA-MENDOZA, CHTD., RESPONDENTS.

No. 25101

March 5, 1996                                   912 P.2d 822

[Rehearing denied July 24, 1996]

*Kossack Law Offices*, Las Vegas, for Appellants.

---

*Jimmerson, Davis & Santoro* and *Lynn M. Hansen,* for Respondents.

**OPINION**

By the Court, Springer, J.:

Two cases have been consolidated for appeal. The first, Case No. 25100, is an appeal from an order dismissing Thomas D. Shimrak's suit for money due for his services as a private investigator. The issue in this first appeal is whether the notation "Lau-Balance pd off" endorsed on the check issued by the Garcia-Mendoza law firm constitutes an accord and satisfaction as a matter of law. The second case, Case No. 25101, is also an

appeal from an order dismissing Shimrak's claim for compensation for services rendered to the Garcia-Mendoza firm. The second case presents a more complicated but still easy-to-decide issue, namely, whether, after professional services have been provided to Garcia-Mendoza by Shimrak, Garcia-Mendoza can defeat Shimrak's claim for compensation on the ground that Shimrak is not permitted to enforce a fee-splitting contract with Garcia-Mendoza because he is *in pari delicto* with the Garcia-Mendoza firm.

We reverse the dismissals in both cases and remand to the district court for trial.

## *CASE NO. 25100*

Garcia-Mendoza owed Shimrak $9,056.94 for services rendered in the "Lau" case. Garcia-Mendoza paid $4,000.00 on account and Eva Garcia-Mendoza of that firm told Shimrak that Mr. Lau was interested in paying Shimrak an amount less than the $5,056.94 that was owing to Shimrak. The Garcia-Mendoza firm sent a check to Shimrak for $2,083.00, with the notation on the check, "Lau-Balance pd off."

Shimrak claims that his understanding of the transaction was that the notation was simply a statement that the Garcia-Mendoza firm would pay no more than the stated $2,083.00 out of its Law Client Trust Account. Shimrak claims to have negotiated the check in the assumption that the law firm would pay him no more money out of the Lau trust account but would itself be responsible for paying the balance due.

"[Accord and satisfaction] can never be implied from language of doubtful meaning. It must clearly appear from the evidence that there was in fact and in reality a meeting of the minds before we will consider an agreement an accord and satisfaction." DeLee v. Cost Reduction Engineering, 101 Nev. 484, 486, 705 P.2d, 161, 163 (1985). "[The] complaint will not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff could prove no set of facts which, if accepted by the trier of fact, would entitle him [or her] to relief." Breliant v. Preferred Equities Corp., 109 Nev. 842, 845, 858 P.2d 1258, 1260 (1993) (quoting Edgar v. Wagner, 101 Nev. 226, 228, 699 P.2d 110, 112 (1985)).

Shimrak is entitled to present his version of the transaction to a factfinder; and, certainly, it does not appear beyond a doubt that no set of facts would entitle him to recover the full amount owing to him.

The order of dismissal is reversed, and the matter is remanded to the district court for trial.

## CASE NO. 25101

Shimrak handled a number of cases for the Garcia-Mendoza firm and claims that a member of the firm agreed in this case to pay a flat rate of $45.00 to $50.00 per hour, plus ten percent of the attorney's fees paid to the firm on each case. Shimrak claims that under these contracts he is entitled to a payment of $139,293.19 plus money owing in the future on fees to be paid to the Garcia-Mendoza firm in installments. Garcia-Mendoza's position is that the contract is void and that Shimrak is not entitled to payment for either his hourly rate or for the ten percent contingency fee.

The Garcia-Mendoza firm claims in its brief that it does not have to pay Shimrak for his services because "the parties stand *in pari delicto,*" a Latin expression which means "equal in guilt." The Garcia-Mendoza brief claims that it would offend the firm's conscience if it were to pay Shimrak the money it promised him.[1] The Garcia-Mendoza brief also claims that since the fee-splitting attorney in this case only received a "private reprimand" from the Bar, "no action can be predicated upon such matters." The Garcia-Mendoza argument seems to be that Garcia-Mendoza does not have to pay Shimrak because "no action may be predicated upon" a private reprimand.[2] According to the Garcia-Mendoza brief, Shimrak, by entering into a fee-splitting contract, "violated a rule of court that is the same as law" and such conduct "would constitute a misdemeanor." Garcia-Mendoza is *in pari delicto* with Shimrak; but, according to Garcia-Mendoza, SCR 106 prevents Shimrak from suing on the contract.

SCR 106 does not grant immunity to an attorney from criminal

---

[1] "[Garcia-Mendoza] could not in good conscious [sic] submit to Shimrak's request to pay upon the illegal contract or contracts in dispute." Respondent's Answering Brief at 12.

[2] The "private reprimand" appears to be the way in which the bar association disciplines its more favored members when they get in serious trouble. As an example, we recently had a case before us in which a lawyer betrayed his client by illegally profiting from his client's misfortune and covertly buying his client's property at a foreclosure sale, conduct that under any objective evaluation would have to be viewed as extremely serious. This egregious misconduct was met by the Bar with its customary sanction for the politically favored (in this case a member of the Bar's Board of Governors), a "private reprimand." By contrast, in another, recent fee-splitting case comparable to this one, the bar decided, in the case of a not-so-favored lawyer, upon the severe penalty of suspension from the practice of law rather than a mere "private reprimand," as was given in the present case. With this kind of disparity of treatment between lawyers facing similar charges, we are hesitant to give much meaning or credence to the "private reprimand" sanction imposed by the bar in the present case.

or civil action related to lawyer disciplinary proceedings. The rule reads, in pertinent part: "A complaint filed in good faith and any investigations, testimony, hearing, or reprimand related to it are absolutely privileged, and no action may be predicated on such matters." Although the rule could be somewhat more explicit, *i.e.*, by stating exactly to whom the privilege applies, the rule is merely a codification of the long-standing privilege associated with judicial proceedings. "A statement made in a judicial proceeding enjoys an absolute privilege against a defamation action as long as the allegedly defamatory statement is reasonably related to the proceeding in which it appears." Hecht v. Levin, 613 N.E.2d 585, 587 (Ohio 1993). An absolute privilege is defined as one which "protects the speaker or publisher without reference to his motives or the truth or falsity of the statement." *Black's Law Dictionary* 1077 (5th ed. 1979). SCR 106 states that the complaint, investigations, testimony, hearing and reprimand are all absolutely privileged, but such privilege is predicated on the good faith of the complainant. This dependence on the good motive of the complainant creates something more akin to a conditional privilege, which "will protect the speaker or publisher unless actual malice and knowledge of the falsity of the statement is shown." *Black's Law Dictionary* 1077 (5th ed. 1979).

Regardless of whether the privilege created by SCR 106 is absolute or conditional (a question which is not before us at this time), there are good policy reasons for granting privilege to statements made in relation to bar complaints.

> This privilege is necessary to encourage the cooperation of witnesses and is based upon public policy that a witness' testimony be privileged in order that the witness feel free to perform a public duty with knowledge that he or she will be insulated from harassment and financial burdens resulting from subsequent litigation.

Klapper v. Guria, 582 N.Y.S.2d 892, 896 (N.Y. Sup. Ct. 1992). The Supreme Court of New Jersey has noted that

> the strong public policy in favor of maintaining strict adherence to the rules of discipline required the removal of any impediment to the effective functioning of the disciplinary system; allowing complainants to be potentially vulnerable to lawsuits brought by attorneys against whom they complained was deemed to be such an impediment.

Matter of Hearing on Immunity for Ethics Com., 477 A.2d 339, 340 (N.J. 1984). On the other hand, there is no public policy interest in insulating attorneys from criminal or civil action as a

result of their misdeeds. We therefore hold that SCR 106 creates a privilege for the protection of the complainant but does not shield a disciplined attorney from other legal actions.

We must assume that the writer of the Garcia-Mendoza brief is serious when she asserts that the attorneys' agreement to pay Shimrak a contingent fee "was void as a matter of publicity [sic]"[3]; still, it would not be fair under the circumstances of this case to adopt a double standard and allow attorneys to receive free investigative services simply because of their claim that the other party to the contract was *"in pari delicto"* with them.

We realize, of course, that traditionally neither courts of law nor equity will interpose to grant relief to parties to an illegal agreement. Application of such a rule to this case, however, would obviously not do justice; and it is hard to argue under the circumstances of this case that Shimrak is not entitled to the agreed-upon compensation for services rendered by him. Aside from the need to do basic justice in this case, however, it would appear that, contrary to the Garcia-Mendoza position, Shimrak is not bound by SCR 188[4] and that he has not engaged in any illegal activity.

The Garcia-Mendoza brief cites several cases for the proposition that court rules have the force of rules of law. *See* Weil v. Neary, 278 U.S. 160 (1929); Finley v. Finley, 65 Nev. 13, 189 P.2d 334 (1948); Haley v. Eureka County Bank, 20 Nev. 410, 22 P. 1098 (1889); however, court rules only have the force of rules of law upon those parties to whom they apply. SCR 39 specifically states that "[t]he supreme court rules set forth in this Part III are the exclusive rules for the governing of *the legal profession* in Nevada." (Emphasis added.) SCR 203.3, entitled "Misconduct," reads, in pertinent part: "It is professional misconduct for a *lawyer* to: (1) Violate or attempt to violate the rules of professional conduct . . . ." (Emphasis added.) As the Texas court said in Atkins v. Tinning, 865 S.W.2d 533, 536-37 (Tex. Ct. App. 1993), "[t]he rules do not govern the behavior of nonlawyers except tangentially in governing how lawyers may interact with them. . . . Violation of the rules subjects only an offending attorney to sanctions." Shimrak has violated no rule or law which applies to him, and therefore he is not *in pari delicto* with the offending member of the Garcia-Mendoza firm.

---

[3]Respondent's Answering Brief at 20.

[4]"A lawyer or a law firm shall not share legal fees with a nonlawyer . . . ."

This court has said that:

the courts should not be so enamored with the latin phrase 'in pari delicto' that they blindly extend the rule to every case where illegality appears somewhere in the transaction. The fundamental purpose of the rule must always be kept in mind, and the realities of the situation must be considered. Where, by applying the rule, [1] the public cannot be protected because the transaction has been completed, [2] where no serious moral turpitude is involved, [3] where the defendant is the one guilty of the greatest moral fault and [4] where to apply the rule will be to permit the defendant to be unjustly enriched at the expense of the plaintiff, the rule should not be applied.

Magill v. Lewis, 74 Nev. 381, 386, 333 P.2d 717, 719 (1958). All four of the *Magill* factors are present in this case. SCR 188 is entitled "Professional independence of a lawyer." At least one court has recognized that the purpose of the prohibition of fee-splitting is to protect the independence of the judgment of lawyers. Gassman v. State Bar, 553 P.2d 1147, 1151 (Cal. 1976). The public would not be protected by refusing to enforce this contract, because Garcia has already exercised her judgment in the cases covered by the contract. Indeed, not to enforce this contract would actually *endanger* the public, because it would allow lawyers to enter into such contracts and then get out of them by invoking SCR 188. The first *Magill* factor is therefore satisfied.

As to the second factor, there is no serious moral turpitude involved here. Third, the Garcia-Mendoza firm member must be seen as being guilty of the greatest moral fault since she is the one who violated a professional rule. Finally, not enforcing the contract would unjustly enrich the law firm at Shimrak's expense, because he has already performed his part of the agreement. Using the *Magill* factors, it is clear that the doctrine of *in pari delicto* should not be applied to deny Shimrak agreed-upon compensation for services rendered.[5]

For the foregoing reasons, the order of the district court

---

[5]The Garcia-Mendoza brief cites a number of cases in which fee-splitting agreements were held to be unenforceable. Many of these cases are "running" cases, in which an investigator is paid a portion of attorney's fees for bringing in cases to the law firm. The case before us is not such a case. From the information at hand, it does not appear that the investigator in question was out soliciting cases for the law firm. This case appears to involve the firm's agreement to pay less than the usual hourly rate and to pay a "bonus" in cases of successful outcomes. There is no reason why these lawyers should not be required to pay what they agreed to pay.

dismissing Shimrak's complaints in both cases is vacated, and the cases are remanded to the district court for further proceedings.

STEFFEN, C. J., and ZENOFF, Sr. J., concur.[6]

ROSE, J., with whom SHEARING, J., agrees, concurring in part and dissenting in part:

I agree with the majority that in Case No. 25100 the district court erred in dismissing Shimrak's complaint on the basis of an accord and satisfaction. The evidence of an accord and satisfaction was ambiguous, and Shimrak may well be able to prove a set of facts which, if accepted by the trier of fact, would entitle him to relief.

I disagree with the majority in Case No. 25101 in its conclusion to enforce a contract which is against public policy. I would adopt a rule similar to the approach taken by New York. New York law provides that arrangements, such as the one in this case which call for attorneys to split fees, "violate[] public policy and, [are] thereby rendered unenforceable." Gorman v. Grodensky, 498 N.Y.S.2d 249, 252 (N.Y. Sup. Ct. 1985). In *Gorman,* the court further stated:

> Although the provisions of the Code of Professional Responsibility do not enjoy the status of decisional or statutory law, they are an explicit expression of the public policy of the State. An agreement made in violation of a code provision, ought not be sanctioned by the court, as would be the case if the court were to permit plaintiff to sue on the contract. The court will refuse to aid either party to enforce this alleged contract.
>
> That the defendants may benefit from the court's refusal to enforce a contract is irrelevant, if enforcement would further a purpose in violation of public policy.

*Id.* (citations omitted).

If, as Shimrak alleges, he entered into a contract for fee splitting, he should not be allowed to benefit. He was an insurance adjustor with thirty years of experience as a licensed private investigator and must have been aware of the legal profession's ethical prohibition against fee splitting. To allow him to benefit by granting him a recovery on this contract, which is in violation of our Supreme Court Rules, would violate public policy. Therefore, I would declare the parties to be *in pari delicto* and allow neither to benefit from the contract's impropriety.

---

[6]THE HONORABLE THOMAS L. STEFFEN, Chief Justice, appointed THE HONORABLE DAVID ZENOFF, Senior Justice, to sit in the place of THE HONORABLE CLIFF YOUNG, Justice. Nev. Const. art. 6, § 19; SCR 10.