CROCKETT & MYERS, LTD., a Nevada Corporation, and J.R. Crockett, Jr., Esq., an individual, Plaintiffs,

v.

NAPIER, FITZGERALD & KIRBY, LLP, a New York limited liability law partnership, and Brian P. Fitzgerald, Esq., an individual, Defendants.

Napier, Fitzgerald & Kirby, LLP, a New York limited liability law partnership, and Brian P. Fitzgerald, Esq., an individual, Counterclaimants,

v.

Crockett & Myers, Ltd., a Nevada Corporation, and J.R. Crockett, Jr., Esq., an individual, Counterdefendants.

No. 2:05–cv–0877–PMP–PAL.

United States District Court, D. Nevada.

April 17, 2006.

1158

Joice B. Nidy, Samuel S. Lionel, Lionel, Sawyer & Collins, Las Vegas, NV, for Plaintiffs and Counterdefendants.

Mark A. Hutchison, Scott A. Flinders, Las Vegas, NV, for Defendants and Counterclaimants.

## ORDER

PRO, Chief Judge.

Presently before this Court is Plaintiffs'/CounterDefendants' Motion to Dismiss Defendants'/CounterClaimants' Amended Counterclaim Pursuant to FRCP 12(b)(6) (Doc. # 25), filed on January 20, 2006. Defendants/CounterClaimants filed an Opposition to Plaintiffs'/CounterDefendants' Motion to Dismiss (Doc. # 28) on February 6, 2006.

Plaintiffs/CounterDefendants filed a Reply in Support of Motion to Dismiss Amended Counterclaim (Doc. # 30) on February 17, 2006. Also before the Court is Defendants'/CounterClaimants' Motion for Leave to Amend Answer and Counterclaim (Doc. # 29), filed on February 10, 2006. Plaintiffs/ CounterDefendants filed an Opposition to Defendants/CounterClaimants Motion for Leave to File Amended Complaint (Doc. # 31) on February 27, 2006. Defendants/ CounterClaim-

ants filed a Reply (Doc. # 32) on March 10, 2006.

## I. BACKGROUND

On January 15, 2001, Michael Nostro died while undergoing a CT scan-guided needle biopsy in Nevada. On or about June 5, 2001, Michael Nostro's wife, Wende Nostro retained Brian P. Fitzgerald, Esq., to investigate the death of her husband in Nevada and to determine whether a viable medical malpractice claim existed. Mr. Fitzgerald is an attorney licensed to practice law in the State of New York and a member of Napier Fitzgerald & Kirby, L.L.P., a limited liability law partnership engaged in the practice of law in New York.

On or about June 28, 2001, Mr. Fitzgerald contacted Nevada attorney J.R. Crockett, Jr., Esq., to participate in the investigation and evaluation of the Nostro medical malpractice claim. Mr. Crockett is a partner in Crockett & Myers, Ltd., a professional corporation engaged in the practice of law in Nevada.

This action arises from a dispute between Plaintiffs/Counterdefendants Crockett & Myers, Ltd., and J.R. Crockett, Jr., Esq., (collectively "Crockett"), and Defendants/Counterclaimants Napier, Fitzgerald & Kirby, L.L.P., and Brian P. Fitzgerald, Esq., (collectively "Fitzgerald"), regarding the division of contingent attorneys' fees recovered as a result of the Nostro litigation.

Fitzgerald alleges that sometime in June 2001, Crockett and Fitzgerald agreed that Crockett would represent Nostro at a contingency rate of 33 1/3% as opposed to Crockett's usual 40% rate. Additionally, Crockett and Fitzgerald agreed that Fitzgerald would act as co-counsel on the case, and Crockett and Fitzgerald would split equally all attorneys' fees. The Amended Complaint also asserts Crockett agreed to pay Fitzgerald a referral fee of fifty percent of the recovered fees as a separate agreement independent of any other fee arrangement. (Am. Compl. [Doc. # 19] at ¶¶ 12–13.)

On August 13, 2001, Crockett, Fitzgerald, and Nostro signed an Attorney Retainer Agreement ("Agreement") drafted by Crockett. (Pls.' Compl., Ex. 1.) Under the Agreement, the two law firms assumed joint responsibility for handling Nostro's and the estate's medical malpractice claims. Fitzgerald claims that his firm subsequently provided legal advice and service on the case, including gathering pertinent medical records, and researching various theories of liability.

In July 2002, Crockett submitted the Nostro case to the then-existing Nevada Medical Legal Screening Panel, and on January 3, 2003, filed a complaint on behalf of Nostro in Nevada State Court. On June 25, 2003, Wende Nostro sent a letter to Fitzgerald advising him that he and his law firm were discharged from any further representation on Nostro's behalf. (Pls.' Compl., Ex. 3.) Over a year later, Crockett negotiated a settlement of the Nostro case, and in accord with the Retainer Agreement, collected one-third of the settlement proceeds as contingent attorneys' fees.

By letter dated October 28, 2004, Crockett informed Fitzgerald of the settlement and further advised Fitzgerald that because Nostro had terminated Fitzgerald's representation before the settlement was reached, Fitzgerald was entitled only to quantum meruit compensation for the time he had worked on the matter. (Pls.' Compl., Ex. 6.) In response, Fitzgerald demanded payment of 50% of the recovered attorneys' fees under the Retainer Agreement, which Crockett has refused to pay.

On May 24, 2005, Crockett filed a Complaint in the Eighth Judicial District Court in and for the County of Clark, State of Nevada, seeking a declaration that Fitzgerald is entitled only to "a quantum meruit recovery for the hours they worked early on in the Nostro case ..." and for a monetary judgment to Fitzgerald consistent with a quantum meruit award. (Notice of Removal [Doc. # 1], Compl.) On July 20, 2005, Fitzgerald removed Crockett's action to this Court (Doc. # 1), and on July 27, 2005, filed an Answer and Counterclaim (Doc. # 3, # 4) alleging counterclaims for breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, declaratory relief, and constructive trust. Crockett moved to dismiss the Counterclaims, asserting Fitzgerald had no rights under the Retainer Agreement because Nostro had fired him, and that any alleged oral agreement for referral fees was unenforceable because it violated attorney ethics rules. The Court granted in part and denied in part the motion, ruling that because Nostro terminated the Retainer Agreement, Fitzgerald had no contract right to enforce the fifty-fifty fee split under that Agreement. The Court permitted Fitzgerald to amend his Counterclaims to include specific allegations supporting the alleged oral referral fee arrangement, and suggested that because Nevada has not addressed the legality of referral fee agreements between attorneys, the Court was inclined to certify certain questions to the Nevada Supreme Court.

Fitzgerald subsequently amended his Complaint to include allegations regarding the alleged oral referral fee agreement between himself and Crockett. Crockett now moves to dismiss the Amended Counterclaims, arguing that even if referral fee agreements between attorneys are enforceable, this particular alleged referral fee agreement is unenforceable under Nevada Supreme Court Rule 155 because it is not proportionate to the work performed, and it was not presented in writing to the client. Fitzgerald responds that Nevada Supreme Court Rule 155 does not govern referral fees. Fitzgerald also argues that even if the agreement is illegal, the Court should enforce the agreement because Crockett violated the ethics rule and should not be able to use his own misconduct to avoid obligations under the oral referral fee agreement. Additionally, Fitzgerald asserts the referral fee agreement complies with Rule 155 under the facts of this case. Finally, Fitzgerald asserts that he is entitled to an even fee split because the parties jointly represented Nostro, or at least to recover in quantum meruit.

Fitzgerald moves the Court for leave to amend the Amended Counterclaims to add several new claims for breach of contract, breach of fiduciary duty, and tortious interference with contractual relations. Fitzgerald asserts the Retainer Agreement required the attorneys to discuss jointly with the client matters such as costs, and that Crockett breached the Agreement by discussing costs with Nostro and suggesting to Nostro she could fire Fitzgerald. Crockett responds that Fitzgerald's motion to amend is untimely under the scheduling order. Crockett also argues amendment is futile because the new claims relate to the Retainer Agreement which Nostro terminated and, in any event, the Agreement did not require Crockett to include Fitzgerald in the conversation with Nostro.

## II. MOTION TO DISMISS AMENDED COMPLAINT

In considering a motion to dismiss, "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." *Wyler Summit P'ship v. Turner Broad. Sys., Inc.,* 135 F.3d 658, 661 (9th Cir.1998)

(citation omitted). However, the Court does not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations in the plaintiff's complaint. *See Clegg v. Cult Awareness Network,* 18 F.3d 752, 754–55 (9th Cir.1994). There is a strong presumption against dismissing an action for failure to state a claim. *See Gilligan v. Jamco Dev. Corp.,* 108 F.3d 246, 249 (9th Cir.1997) (citation omitted). The issue is not whether Plaintiff ultimately will prevail, but whether he may offer evidence in support of his claims. *See id.* at 249 (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). Consequently, the Court may not grant a motion to dismiss for failure to state a claim "unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Hicks v. Small,* 69 F.3d 967, 969 (9th Cir.1995).

The liberal rules of notice pleading set forth in the Federal Rules of Civil Procedure do not require a plaintiff to set out in detail the facts supporting his claim. *See Yamaguchi v. U.S. Dep't of the Air Force,* 109 F.3d 1475, 1481 (9th Cir.1997) (quoting *Conley v. Gibson,* 355 U.S. at 47, 78 S.Ct. 99). All the Rules require is a "short and plain statement" that adequately gives the defendant "fair notice of what the plaintiffs claim is and the grounds upon which it rests." *Id.* (citations and internal quotations omitted). A claim is sufficient if it shows that the plaintiff is entitled to any relief which the court can grant, even if the complaint asserts the wrong legal theory or asks for improper relief. *See United States v. Howell,* 318 F.2d 162, 166 (9th Cir.1963).

Fitzgerald asserts that during a June 2001 telephone conversation with Crockett, the attorneys orally agreed Fitzgerald would get 50% of the fees in payment for referring Nostro to Crockett & Myers. Crockett denies the parties entered into such an agreement, and argues that even if they did, it would be unenforceable because Nevada's attorney discipline rules prohibit fee splitting unless it is in proportion to the services performed, and the client consents. Fitzgerald responds that the oral agreement is not illegal because Nostro later agreed in the Retainer Agreement to the fee split. Fitzgerald further argues that even if it is illegal, the Court should enforce the agreement because Crockett is a Nevada attorney bound by Nevada's ethical rules, and he should not be permitted to benefit from his own illegal conduct. In reply, Crockett notes that Fitzgerald is bound by similar ethical rules as an attorney licensed to practice law in the State of New York, and that even assuming the alleged agreement existed, both attorneys would be in violation of the ethical rules that apply in the states in which they are admitted to practice.

Nevada Supreme Court Rule 155 prohibits attorneys from different firms from splitting fees unless:

(a) the division is in proportion to the services performed by each lawyer or, by written agreement with the client, each lawyer assumes joint responsibility for the representation;

(b) The client is advised in writing of and does not object to the participation of all the lawyers involved; and

(c) The total fee is reasonable.

As this Court noted in its prior Order, the Nevada Supreme Court has not specifically addressed whether referral fees ever are appropriate under Rule 155 or Rule 196(15). *See* Nev. Sup.Ct. R. 196(15) (prohibiting a lawyer from giving "anything of value to a person for recommending the lawyer's services, except that a lawyer

may pay the reasonable cost of advertising or written or recorded communication permitted by these rules and may pay the usual charges of a lawyer referral service or other legal service organization").

■ Assuming Nevada does not outright forbid agreements between attorneys for referral fees, such a referral fee division would have to comply with Rule 155. The Rule states it applies to "splitting fees" between attorneys from different firms. Thus, because Fitzgerald and Crockett are attorneys from different firms who allegedly agreed to split fees equally, Rule 155 applies, and the alleged agreement must comply with the Rule's requirements or it is against Nevada's public policy.

Rule 155's first requirement is that the fee division is either in proportion to the services each attorney provides, or by written agreement with the client, each attorney assumes joint responsibility for the case. The Nevada Supreme Court has given no indication of how a court is to determine what percentage of recovery is in proportion to the services provided by the referring attorney under Rule 155(a). Crockett asserts his firm's normal practice is one-third of 40%, or 13 1/3%. Fitzgerald, on the other hand, seeks 50% of fees for the referral plus the services he performed in the Nostro case. While the Court doubts fifty percent ever would be "in proportion" to a referral fee, the Court has no guidance from the Nevada Supreme Court on what factors to consider in making such a determination.

Rule 155 also requires that the client be advised in writing and not object to the participation of all the lawyers. The attorneys allegedly agreed to the referral fee orally over the phone, without Nostro's knowledge or consent. However, Nostro later signed the Retainer Agreement agreeing to the participation of both attorneys. It is unclear from Rule 155's language whether Nostro must be advised of and agree to the participation of both lawyers at the time they enter into the agreement, or whether she later can ratify the participation of all the attorneys. Moreover, neither party addresses whether Rule 196 prohibits referral fees.

■ The Court need not resolve the application of Nevada Supreme Court Rules 155 or 196 to the current facts, however, because assuming the oral referral fee agreement did not comply with Nevada's attorney ethics rules, the Court concludes Nevada nevertheless would enforce the agreement under the circumstances in this case. As the Court noted in its prior Order, Nevada recognizes the rule that "traditionally neither courts of law nor equity will interpose to grant relief to parties to an illegal agreement." *Shimrak v. Garcia–Mendoza*, 112 Nev. 246, 912 P.2d 822, 825–26 (1996). Nevada addressed the issue of the enforceability of a contract that violated Nevada's attorney ethics rules in *Shimrak*, 912 P.2d at 824–26. In Shimrak, a private investigator entered into a contract for his services with an attorney for which he was to be paid a flat per hour rate plus 10% of attorneys' fees collected on each case. *Id.* The investigator sued for payment on his services, but the attorney argued that because Nevada Supreme Court rules prohibit attorneys from splitting fees with non-attorneys, the contract was void as against public policy, and unenforceable. *Id.* The Nevada Supreme Court appeared to accept the general premise that contracts in violation of the ethical rules would be void and unenforceable, but held that the contract nonetheless was enforceable in this case. *Id.* at 825–26. First, the Court noted that the investigator was not an attorney and thus not bound by the ethical rules. *Id.* Consequently, he had not en-

gaged in any illegal or unethical behavior. *Id.* Second, the Court found it would be inequitable to allow the attorney to benefit from free investigative services because he violated the ethical rules. *Id.* at 826.

Here, although Fitzgerald is not a Nevada licensed attorney, he is a New York licensed attorney. New York's fee-splitting rule is nearly identical to Nevada's Rule 155. Code of Prof. Resp., DR 2–107 McK. Consol. Laws, Book 29 App. A.[1] Thus, both Fitzgerald and Crockett are bound to attorney ethics rules and Fitzgerald is not completely free from guilt as was the investigator in *Shimrak.* However, Fitzgerald is at most equal in fault to Crockett. Additionally, accepting Fitzgerald's allegations as true on a motion to dismiss, like the attorney in *Shimrak,* Crockett is using his own violation of the ethics rules to shield himself from contractual liability and to receive the benefit of the alleged bargain for free or for an amount less than that to which Crockett contractually agreed.[2] Because the Nevada Supreme Court indicated in *Shimrak* it would not permit an attorney to use his own violation of the ethics rules to shield himself from contractual liability, the Court concludes Nevada would make the same decision in this case. The Court therefore will deny Crockett's motion to dismiss the Amended Counterclaims.

### III. MOTION TO AMEND

■ Fitzgerald moves to amend the Amended Complaint to add new claims for breach of contract, breach of fiduciary duty, and tortious interference with contractual relations. Fitzgerald asserts the Retainer Agreement required the attorneys to discuss jointly matters such as costs with the client, and that Crockett breached the Agreement by discussing costs with Nostro and suggesting to Nostro she could fire Fitzgerald. Crockett responds that Fitzgerald's motion to amend is untimely under the scheduling order, and is futile because the new claims relate to the Retainer Agreement which Nostro terminated and, in any event, the Agreement did not require Crockett to include Fitzgerald in the conversation with Nostro.

■ Generally, the Court should allow amendments to pleadings under Federal Rule of Civil Procedure 15(a). But where the Court has entered a scheduling order, a request to amend the pleadings no longer is governed by Rule 15; rather, Rule 16 controls. *Coleman v. Quaker Oats Co.,* 232 F.3d 1271, 1294–95 (9th Cir.2000). Where a party moves to amend the pleadings after a deadline set in the Rule 16 scheduling order, the Court should not modify the scheduling order "except upon a showing of good cause." Fed.R.Civ.P. 16(b). The "good cause" standard "primarily considers the diligence of the party seeking the amendment." *Coleman,* 232 F.3d at 1294 (quotation omitted). Additionally, although Rule 16(b) does not require a showing of prejudice, the Court may consider in making its good cause determination whether prejudice would result to the party opposing amendment. *Id.* at 1295.

1. DR 2–107 prohibits a lawyer from dividing fees with a lawyer from another firm unless the client consents after full disclosure of the fee division; the division is proportionate to services performed by each lawyer or, by a writing given to the client, each lawyer assumes joint responsibility for the representation; and the total fee is reasonable.

2. Although Crockett originally appeared to be taking the position that Fitzgerald was entitled to quantum meruit recovery, Crockett now has indicated Fitzgerald may not be entitled to any fees if Nostro had good cause to discharge Fitzgerald. *(See* Reply in Supp. of Mot. to Dismiss Am. Countercl. [Doc. # 30] at 4.)

This Court entered a scheduling order setting January 23, 2006 as the deadline for filing amendments to pleadings. (Scheduling Order [Doc. # 12].) Fitzgerald did not move to amend the Complaint until February 10, 2006. Accordingly, Rule 16(b) applies. Fitzgerald's motion to amend comes only eighteen days beyond the deadline. Discovery has not closed. This case has not progressed to the stage that amendment at this date would prejudice Crockett, and Crockett has not identified any such prejudice.

Nonetheless, Crockett argues the Court should deny the motion because amendment would be futile. Crockett contends this Court already ruled Fitzgerald has no claim under the Retainer Agreement and because the Agreement did not require Crockett to include Fitzgerald in cost discussions with Nostro. The Court's prior ruling held only that Fitzgerald's right to fifty percent of the contingency fee under the Retainer Agreement expired upon Nostro's termination of that Agreement. The Court made no ruling on what contractual rights Fitzgerald had while the Retainer Agreement still was in effect. Because Fitzgerald now asserts Crockett breached the Agreement before Nostro terminated the contract, the Court's prior ruling has no application to the present claims. Further, the Court concludes the better course is to permit amendment and let the parties fully brief contract construction, breach of fiduciary duty, and joint venture issues on the merits rather than construe a contract in response to a motion to amend. The Court therefore will grant Fitzgerald's motion to amend the Amended Counterclaims.

## IV. CONCLUSION

IT IS THEREFORE ORDERED that Plaintiffs'/CounterDefendants' Motion to Dismiss Defendants'/CounterClaimants' Amended Counterclaim Pursuant to FRCP 12(b)(6) (Doc. # 25) is hereby DENIED.

IT IS FURTHER ORDERED that Defendants'/CounterClaimants' Motion for Leave to Amend Answer and Counterclaim (Doc. # 29) is hereby GRANTED.

IT IS FURTHER ORDERED that the Clerk of this Court shall detach and file separately Defendants/CounterClaimants' Second Amended Answer and Counterclaims (*see* Doc. # 29).