OPINION OF THE COURT
Allan L. Winick, J.
Petitioner Michael Toffler moves to "dismiss” a pending *704 arbitration proceeding between himself and respondent Martin Pokorny.
Petitioner Toffler is a periodontist licensed to practice in New York State. Respondent Pokorny is a dentist licensed to practice in New York State. In September 1988, Toffler and Pokorny entered into a sublease wherein Toffler agreed to pay Pokorny a percentage of his gross receipts from patients in exchange for office space (three treatment rooms, supplies, equipment and staff). The sublease terms required all controversies to be submitted to arbitration.
Petitioner contends that at the time he entered into this sublease, the percentage of his gross patient receipts was equivalent to the cost of rent and services provided. Now his practice has grown and this arrangement no longer reflects a fair compensation. He also contends that since 1990, when his practice started to grow, this "sublease agreement” became more akin to fee splitting rather than a fair rental arrangement.
Petitioner notes that New York State Education Law § 6509-a prohibits the splitting of dental professional fees by nonaffiliated professionals. Petitioner’s position is that this arrangement clearly violates the New York State Education Law which proscribes such fee splitting as professional misconduct.
Petitioner concludes that when a particular agreement violates public policy, such agreement cannot be enforced by arbitration since the agreement has an illegal purpose, the sublease is unenforceable and the arbitration must be dismissed.
Respondent Pokorny contends that a stay of the arbitration proceeding is time barred by the applicable 20-day Statute of Limitations. (See, CPLR 7503 [c].) The proceeding must be dismissed since petitioner participated in the arbitration, and any alleged illegality pursuant to Education Law § 6509-a is a question of fact which requires a hearing before the arbitrator.
Apparently, the arbitration has proceeded for approximately one year and four months. An answer was interposed by Toffler which claimed numerous setoffs. An independent auditor had reviewed some of the records and each party participated in the arbitration by testifying.
Respondent also alleges that the arbitrator has sufficient power to fashion any award deemed just and equitable and *705 within the scope of the contract in accordance with American Arbitration Association, Commercial Arbitration Rules § 43. Furthermore, respondent contends that even if there is a violation of Education Law § 6509-a, the arbitrator is not precluded from fashioning any remedy he deems appropriate.
An examination of the lease entered into between petitioner Toffler and respondent Pokorny states in covenant No. 16 that any dispute arising out of this agreement shall be resolved through binding arbitration under the rules of the American Arbitration Association and proper venue shall be in Nassau County, New York only.
The announced policy of this State favors and encourages arbitration as a means of conserving the time and resources of the courts and contracting parties. (Matter of Nationwide Gen. Ins. Co. v Investors Ins. Co., 37 NY2d 91, 95.) Generally, it is for the courts to make the initial determination as to whether the dispute is arbitrable. Ideally, the courts should confine themselves to the arbitration clause and leave the merits to the arbitrator. (Matter of Nationwide Gen. Ins. Co. v Investors Ins. Co., supra, at 95.)
Basically, the courts perform the initial screening process designed to determine in general terms whether the parties have agreed that the subject matter under dispute should be submitted to arbitration. Once it appears that there is, or is not a reasonable relationship between the subject matter of the dispute and the general subject matter of the underlying contract, the court’s inquiry is at an end. Penetrative and definitive analysis of the scope of the agreement must be left to the arbitrators whenever the parties have broadly agreed that any dispute involving interpretation and meaning of the agreement should be submitted to arbitration. (Matter of Nationwide Gen. Ins. Co. v Investors Ins. Co., supra, at 96.)
In the context of an arbitration proceeding, the arbitrator is not strictly limited to the remedies requested by the parties. An arbitrator is empowered to "do justice” and the award may well reflect the spirit rather than the letter of the agreement. (Matter of Port Washington Union Free School Dist. v Port Washington Teachers Assn., 45 NY2d 411, 418.)
However, where the parties have expressly agreed to arbitrate their dispute, it remains to be determined whether the subject matter of the dispute is one that may be submitted to arbitration without violation of any law or public policy and, if so, whether it falls within the scope of the arbitration agreement.
*706 "Hence, where jurisdiction over a particular type of dispute is statutorily bestowed exclusively upon the courts (see, e.g., Matter of Knickerbocker Agency [Holz], 4 NY2d 245; cf., Matter of South Colonie Cent. School Dist. [South Colonie Teachers Assn.], 46 NY2d 521, 525-526) or where judicial, as opposed to arbitral, enforcement of particular rights and prohibitions is mandated by public policy (see, e.g., Board of Educ. v Areman, 41 NY2d 527; Matter of Aimcee Wholesale Corp. [Tomar Prods], 21 NY2d 621), an agreement to arbitrate will not be given effect by the courts. Otherwise, where no such conflict with law or public policy exists, the courts will enforce the parties’ contractual decision to submit their disputes to arbitration (see, Matter of Sprinzen [NombergJ, supra, at pp 631-632). Moreover, while a specifically enumerated restriction upon arbitral authority will be upheld by the courts * * * (Matter of United Nations Dev. Corp. v Norkin Plumbing Co., 45 NY2d 358, 364), no such limitation upon either factual or legal dispute resolution will be inferred from a broadly worded contractual provision expressly calling for the arbitration of all disputes arising out of the parties’ contract (Matter of Turner [Booth Mem. Hosp] 63 NY2d 633; Matter of Albany County Sheriff’s Local 775 [County of Albany], 63 NY2d 654 * * * Matter of Board of Educ. v Dover-Wingdale Teachers’ Assn., 61 NY2d 913).” (Maross Constr. v Central N. Y. Regional Transp. Auth., 66 NY2d 341, 345-346.)
There is no doubt that a violation of Education Law § 6509-a is against public policy. The statute initially became effective in 1977 and prohibits the splitting of professional fees by nonaffiliated professionals. By amendment in 1991, such fee splitting subjected the professional to revocation, suspension or annulment of his or her license. The courts have found that where a party’s arrangement is illegal, the law will not extend its aid to either of the parties, or listen to their complaints against each other but will leave them where their own acts have placed them. (Hartman v Bell, 137 AD2d 585, 586.) Furthermore, the courts have found that by tendering a percentage of patient fees to another nonrelated professional, there is a violation of the public policy of New York State as reflected in Education Law § 6509-a. As a licensed professional voluntarily participating in this type of unethical arrangement for splitting a fee, a nonaffiliated professional is not entitled to recover under the theory of unjust enrichment. (Sachs v Saloshin, 138 AD2d 586, 587.)
The question this court must answer is whether it will *707 prohibit this arbitration due to this violation of public policy even though it has already commenced. The courts give us some guidance in making this determination.
" '[The] instances where courts will intervene in the arbitration process are, without apparent exception, cases in which public policy considerations, embodied in statute or decisional law, prohibit, in an absolute sense, particular matters being decided or certain relief being granted by an arbitrator. Stated another way, the courts must be able to examine an arbitration agreement or an award on its face, without engaging in extended factfinding or legal analysis, and conclude that public policy precludes its enforcement.’
"An agreement to arbitrate will not be presumed to be void as against public policy, if it may be construed in a manner which would make it consistent with the laws and valid (Curtis v Gokey, 68 NY 300, 304; see Bigelow v Benedict, 70 NY 202, 204-205; Shedlinsky v Budweiser Brewing Co., 163 NY 437, 439).
"Illustrative of the matters which have been held to be beyond the arbitrator’s jurisdiction are those involving the enforcement of this State’s antitrust laws, which have been recognized as representing 'public policy of the first magnitude’ (Matter of Aimcee Wholesale Corp. [Tomar Prods.], 21 NY2d 621, 625), and the liquidation of insolvent insurance companies (Matter of Knickerbocker Agency [Holz] 4 NY2d 245). It has also been held that an arbitrator is without jurisdiction to award punitive damages (Garrity v Lyle Stuart, Inc., 40 NY2d 354; Matter of Publishers’ Assn. [Newspaper & Mail Deliverer’s Union] 280 App Div 500), and that an agreement to arbitrate, when enforcement is sought by the lender, cannot divest the courts of their authority to determine whether a purported agreement is in fact a usurious loan, and thus illegal (compare Durst v Abrash, 22 AD2d 39, 44, affd 17 NY2d 445, with Rosenblum v Steiner, 43 NY2d 896, 898)” (Mendelsohn v A & D Catering Corp., 100 AD2d 209, 215; see also, Matter of Sprinzen [Nomberg] 46 NY2d 623, supra).
Respondent Pokorny is attempting to enforce an agreement that is patently unethical and therefore illegal. There is no requirement for extended legal analysis for this court to come to the conclusion that this type of agreement constitutes prohibited fee splitting and is against public policy. The court certainly has the authority to stay this arbitration, even though already commenced, since, on its face, the fee splitting arrangement is patently in violation of the Education Law.
*708 The second part of respondent Pokorny’s argument is that this court is powerless to extend the period within which one may seek a stay of arbitration. CPLR 7503 (c) states that an application to stay arbitration must be made by the party sued within 20 days after service upon him of the notice of demand or he shall be precluded. A petition to stay arbitration must be brought within 20 days after service of the demand for arbitration. This limitation is strictly enforced and a court has no jurisdiction to entertain an untimely application. (Matter of Spychalski, 58 AD2d 193, affd 45 NY2d 847; Matter of Allcity Ins. Co. [Vitucci], 151 AD2d 430; Matter of Colonial Penn Ins. Co. v Ennab, 168 AD2d 494.)
Apparently more than 20 days has expired. The question here is whether the Statute of Limitations under CPLR 7503 precludes this court from entertaining this application when the matter to be arbitrated is against public policy. Logic dictates that if the matter to be arbitrated is against public policy, then it is not the proper subject matter of arbitration. Arbitration agreements are unenforceable where substantive rights, embodied by statute, express a strong public policy which must be judicially enforced. (Harris v Iannaccone, 107 AD2d 429, 431-432, affd 66 NY2d 728.) A violation of Education Law § 6509-a expresses a strong public policy with respect to unethical agreements between professionals. An agreement which violates this statute is nonarbitrable.
There is no anomaly in not enforcing a Statute of Limitations when to do so would aid and assist the party claiming its protection in violating the law. To permit the arbitration to continue and then refuse to confirm the award is a waste of time and effort. Judicial economy suggests that the process be stopped now, rather than wait.
An analogous proposition is the affirmative defense of subject matter jurisdiction which is never waived. (CPLR 3211 [a] [2].) A judgment rendered without subject matter jurisdiction is void and the defect may be raised at any time and may not be waived. (Lacks v Lacks, 41 NY2d 71, rearg denied 41 NY2d 862.)
Similarly, if the issue to be arbitrated is against public policy, the arbitrator does not have the jurisdiction to reach a conclusion concerning a provision of an agreement which is patently illegal. (See, Matter of Sprinzen [Nomberg], supra; Mendelsohn v A & D Catering Corp., supra; see also, Matter of Aimcee Wholesale Corp. [Tomar Prods.], 21 NY2d 621, 629, *709 supra [where the Court stated that the broadest of arbitration agreements cannot oust our courts from their role in the enforcement of major State policies, especially those embodied in statutory form].) Therefore, even if the Statute of Limitations has expired, the commencement and continuation of this arbitration with respect to that provision is void ab initia.
Therefore, the arbitration is permanently stayed.