OPINION OF THE COURT
Ronald A. Zweibel, J.
Petitioner Deborah Larrison moves this court for an order preliminarily enjoining arbitration commenced by respondent Scarola Reavis & Parent LLP (SRP) for legal fees, pending a determination of whether such a claim is in fact arbitrable. According to petitioner, SRP’s claim for legal fees is not arbitrable before the American Arbitration Association because the “arbitration provision” and the “engagement letter” violate public policy and therefore, are unenforceable. Petitioner argues that SRP failed to follow the proper procedures in obtaining petitioner’s alleged “consent” to submit any claims by SRP against her for legal fees to binding arbitration, without de novo judicial review of any resulting arbitration award. Specifically, petitioner claims that SRP never provided her with a copy of Rules of the Chief Administrator (22 NYCRR) part 137.
Respondent Scarola Reavis & Parent LLP opposes the motion. According to SRfi petitioner has waived her right to stay arbitration by actively participating in the arbitration.
Petitioner counters by arguing that regardless of whether she “participated” in the arbitration, the “arbitration provision” is unlawful and violates the public policy of the state, and therefore, the court must stay the pending arbitration. Since petitioner never gave a knowing and informed “consent” to binding arbitration of SRP’s claims for legal fees, she could not, as a matter of law, waive her right to object to such arbitration by allegedly “participating” in the same.
On March 7 or 8, 2004, petitioner retained SRP to represent her in connection with her claims against her former employer. Petitioner executed an engagement letter prepared by the law firm of SRfi wherein she agreed to compensate SRP for its legal services.[1] Petitioner initially conferred with Helen D. Reavis, Esq., a named partner at SRfi who signed the engagement let *574 ter on behalf of the firm. Later, she also dealt with Richard J.J. Scarola, Esq., another named partner and Laurie S. Leonard, Esq., an associate.[2]
Under the paragraph entitled “Scope of Services,” the engagement letter sets forth the parameters of its representation:
“SRP is hereby retained by you to provide legal representation and employment counseling in connection with issues arising from your relationship with American Strip Steel Co. and related companies (collectively, the ‘company’), and related assignments as may be required from time to time (collective, the ‘Matter’). It is expressly understood and agreed that in the case of any request by you for additional services not mentioned in this paragraph, but requested generally by you, or any service that we provided because in our judgment it is necessary in the course of representing you in connection with the Matter, then any such service shall be governed by this Agreement; provided however that we shall separately discuss and agree upon possible litigation concerning your dispute concerning the Company, and the terms of this Agreement shall not pertain to such possible separate legal action.”
Petitioner alleges that she did not engage SRP to perform litigation work and the engagement letter did not govern its performance of any litigation work.
Despite this, SRP initiated litigation on petitioner’s behalf. SRP filed a complaint with the Equal Employment Opportunity Commission (EEOC) in New York (which was subsequently transferred by the EEOC to the New Jersey Division of Civil Rights). SRP also filed an assault and battery complaint against the chairman of the Company in the United States District Court for the Southern District of New York.
Under the paragraph entitled “Arbitration of Certain Disputes,” the engagement letter purports to require that any claims by SRP against petitioner for legal fees be submitted to binding arbitration, without de novo judicial review of any resulting arbitration award:
“The Parties agree that any claim arising out of or *575 relating to this Agreement, or breach thereof, will be resolved by binding arbitration in the City of New York in accordance with the rules then obtaining of the American Arbitration Association (‘AAA’), and judgment upon the award rendered by the AAA be entered and enforced in any court having jurisdiction thereof; provided, however, that no claim that you may have against SRI] whether asserted as a claim, counterclaim or otherwise, shall be referred to or resolved by Arbitration unless SRP specifically agrees after description of such claim to SRP by you in writing and unless there is also specific written agreement by any insurance carrier which may have Coverage for any potential liability for SRP”
According to petitioner, at no time did Ms. Reavis, or any other attorney at SRP provide petitioner with a copy of part 137 of the Rules of the Chief Administrator nor did they advise petitioner of her rights under part 137 of the Rules of the Chief Administrator. Specifically, petitioner was never advised that, under part 137, she had the right to: (a) elect nonbinding arbitration of any claims by SRP against her for legal fees; (b) assert in such an arbitration any of her own claims or counterclaims against SRI] relating to fees charged by SRP; (c) seek de novo judicial review of any such arbitration award; and (d) do all of the same without the threat of being responsible for any attorney’s fees incurred by SRP in attempting to collect its alleged legal fees.
Petitioner further claims that at no time did any attorney at SRP advise her that she had the right under part 137 of the Rules of the Chief Administrator to reject SRP’s proposal that she agree to binding arbitration, before the AAA of any claims by SRP against her for legal fees, and choose instead to reserve her rights under the part 137 process.
SRP in fact appears to concede that they did not follow the proper procedures under part 137 by seeking to obtain or obtaining petitioner’s written consent to waive her rights thereunder, and at no time did petitioner give the requisite knowing written waiver of such rights in the form prescribed by the Rules of the Chief Administrator.
The court notes that the arbitration provision is one-sided. While petitioner allegedly agreed to arbitrate any claims by SRP against her, she allegedly forfeited her right to assert any claims or counterclaims against SRP that she otherwise would have in a fee dispute arbitration under part 137.
*576 Additionally, in the paragraph entitled “Retainer,” notwithstanding the fact that petitioner allegedly did not engage SRP to perform any litigation work, the engagement letter required her to advance a $10,000 retainer payment to SRP Claiming that she did not know her rights under part 137, petitioner agreed to do so and advanced the monies to SRP
In the paragraph entitled “Binding Effect of Statements,” the engagement letter purports to hold petitioner accountable for any attorneys’ fees incurred by SRP in attempting to collect its legal fees.
On June 18 or 21, 2004, petitioner discharged SRP and retained new attorneys to represent her in her dispute with the Company. Upon the advice of her new employment counsel, she dismissed both the EEOC complaint and the federal lawsuit. Petitioner’s new attorneys are trying to determine the extent to which SRP’s ill-fated federal court and EEOC filings have damaged her case against the Company.
Between March 6, 2004 and June 24, 2004, SRP ran up more than $56,000 in legal fees in the course of performing tasks, such as: (a) evaluating the case, (b) negotiating with the Company, (c) preparing and filing a battery complaint, and (d) preparing and filing an EEOC complaint. According to petitioner, a substantial portion of SRP’s billings relate to litigation work. Of the $56,000 amount that petitioner has been billed, she has paid $28,000. She has refused to pay the balance of approximately $29,000 on the ground that she was poorly advised and over-billed.
On September 29, 2004, SRP sent petitioner, by first class mail and certified mail, return receipt requested, a notice, pursuant to CPLR 7503 (c), informing her that SRP intended to seek to arbitrate its claims for legal fees before the AAA. The notice informed petitioner that she had 20 days in which to seek a stay of arbitration pursuant to CPLR 7503 (c). Petitioner received the copy of the notice sent by certified mail on or about October 18, 2004.
SRP filed a demand for arbitration with the AAA seeking approximately $35,000. Petitioner has neither filed an answer to the demand, nor participated in any hearings.
On November 11, 2004, petitioner’s new counsel participated in a teleconference with SRP allegedly concerning the arbitration. According to SRR at no time did petitioner’s new attorney raise an objection to arbitration.
*577 The policy of this state favors and encourages arbitration as a means of conserving the time and the resources of the courts and contracting parties (see Matter of Nationwide Gen. Ins. Co. v Investors Ins. Co. of Am., 37 NY2d 91, 95 [1975]). Generally, it is for the courts to make the initial determination as to whether the dispute is arbitrable. Ideally, the courts should confine themselves to the arbitration clause and leave the merits to the arbitrators (see Nationwide Gen. Ins. Co. v Investors Ins. Co. of Am., 37 NY2d at 95).
Basically, the courts perform the initial screening process designed to determine in general terms whether the parties have agreed that the subject matter under dispute should be submitted to arbitration. Once it appears that there is, or is not a reasonable relationship between the subject matter of the dispute and the general subject matter of the underlying contract, the court’s inquiry is at an end. Penetrative and definitive analysis of the scope of the agreement must be left to the arbitrators whenever the parties have broadly agreed that any dispute involving interpretation and meaning of the agreement should be submitted to arbitration (see Nationwide Gen. Ins. Co. v Investors Ins. Co. of Am., 37 NY2d at 96). However, where the parties have expressly agreed to arbitrate their dispute, it remains to be determined whether the subject matter of the dispute is one that may be submitted to arbitration without violation of any law or public policy and, if so, whether it falls within the scope of the arbitration agreement.
“Hence, where jurisdiction over a particular type of dispute is statutorily bestowed exclusively upon the courts, or where judicial, as opposed to arbitral, enforcement of particular rights and prohibitions is mandated by public policy, an agreement to arbitrate will not be given effect by the courts. Otherwise, where no such conflict with law or public policy exists, the courts will enforce the parties’ contractual decision to submit their disputes to arbitration. Moreover, while a specifically enumerated restriction upon arbitral authority will be upheld by the courts . . . , no such limitation upon either factual or legal dispute resolution will be inferred from a broadly worded contractual provision expressly calling for the arbitration of all disputes arising out of the parties’ contract” (Maross Constr. v Central N.Y. Regional Transp. Auth., 66 NY2d 341, 345-346 [1985] [citations omitted]).
*578 The Chief Administrative Judge of the State of New York promulgated part 137. It applies to all matters where representation commenced after January 1, 2002, unless specifically excluded by one of the categories in section 137.1 (b). These rules require all attorneys suing for fees to notify the client first that the client has the option of proceeding to the fee dispute resolution program in lieu of court. This must either be by contract in the retainer agreement, in which case the attorney can proceed to commence the proceeding at the appropriate local administrative body (in most cases, the local bar association), or, in the absence of a retainer providing for arbitration, the attorney must send notice to the client by certified mail or personal service as provided in section 137.6, entitled “Notice of Client’s Right to Arbitrate.” If the client does not request arbitration within 30 days, the attorney may then commence litigation. Such arbitration will be binding on both parties after 30 days if neither party seeks a trial de novo. Section 137.6 (b) requires that an attorney who institutes an action to recover a fee must allege in the complaint compliance with the rules, as described above. SRP appears to admit that it did not comply. Thus, there is little doubt that SRP violated part 137 of the Rules of the Chief Administrator. An attorney may not collect a fee barred by the public policy expressed in the Code of Professional Responsibility (see L.H. v V.W., 171 Misc 2d 120, 123 [Civ Ct, Bronx County 1996]).
In this case, to allow the respondent to circumvent the Rules of the Chief Administrator would be against public policy. The fee dispute rules were passed to counter the public’s perception of attorneys and the legal system. The rules were intended to instill confidence in attorneys and the legal system by providing clear guidelines as to what duties are incumbent on, and what rights inure to the benefit of the attorney and the client.
The question this court must answer is whether it will prohibit this arbitration due to this violation of public policy even though the arbitration process has already commenced.
“ ‘ “[The] instances where courts will intervene in the arbitration process are, without apparent exception, cases in which public policy considerations, embodied in statute or decisional law, prohibit, in an absolute sense, particular matters being decided or certain relief being granted by an arbitrator. Stated another way, the courts must be able to examine an arbitration agreement or an award on its *579 face, without engaging in extended fact-finding or legal analysis, and conclude that public policy precludes its enforcement.” “An agreement to arbitrate will not be presumed to be void as against public policy, if it may be construed in a manner which would make it consistent with the laws and valid” ’ ” (Matter of Toffler v Pokorny, 157 Misc 2d 703, 707 [Sup Ct, Nassau County 1993]; see Curtis v Gokey, 68 NY 300, 304 [1877]).
Although attorney and client are presumed to possess equal bargaining power when entering into the initial contract of employment, the agreement will not be enforced if it is unconscionable or illegal. A retainer agreement will not be enforced in the absence of proof that it was fully comprehended by the client (see Ransom v Cutting, 112 App Div 150 [1st Dept 1906], affd 188 NY 447 [1907]; Cohen v Ryan, 34 AD2d 789 [2d Dept 1970]). This is because it can be impractical for a client to consult independent counsel before signing a retainer agreement or a fee dispute arbitration clause.
Trust is the bedrock upon which the attorney-client relationship is built. An enforceable agreement should contain a clear statement that a client has an absolute right to proceed under part 137. This court believes that absent a clearer statement in the arbitration agreement, the election to pursue arbitration or go to court belongs to the client. Based on the record before this court, this court cannot conclude that petitioner made an informed and voluntary waiver.
The court questions whether the insertion of an arbitration clause like the one at issue into a retainer agreement inherently violates the trust between the client and attorney in that it pits the lawyer’s interests against that of the client. The terms and features of the arbitration agreement are designed, not for the client’s benefit but to protect and advance the lawyer’s interest in a forum of the lawyer’s choosing. Adoption of such a practice places the lawyer in an irreconcilable ethical conflict which will only serve to further undermine the public’s confidence in the profession. A lawyer has an ethical duty, to use his or her best efforts and professional judgment to advance the client’s interest, not his or her own. Thus, a retainer agreement that contains a clause to arbitrate in front of the American Arbitration Association, which waives the client’s right to access to the courts to resolve disputes arising out of the attorney-client relationship must be viewed as inherently unenforceable and against *580 public policy (see Kamaratos v Palias, 360 NJ Super 76, 89, 821 A2d 531, 539-540 [2003]).
In setting up part 137 and a comprehensive regulatory alternate fee resolution scheme, it appears to this court that the Chief Administrator of the courts has indicated his intent to preempt any other action affecting this critically important aspect of the practice of law. In fact, this court is not sure that, without explicit court approval, the parties, by private agreement, can alter or expand upon the available dispute resolution options. Without deciding this issue, the court finds that SRP is attempting to enforce an agreement that is patently unethical and therefore illegal. There is no requirement that this court indulge in extended legal analysis before coming to the conclusion that this type of agreement constitutes prohibited conduct and is against public policy. This court certainly has the authority to stay this arbitration, even though already commenced, since, on its face, the arbitration agreement and engagement letter are patently in violation of the rules set forth in part 137 of the Rules of the Chief Administrator.
As to respondent’s argument that this court is powerless to extend the period within which one may seek a stay of arbitration, CPLR 7503 (c) states that an application to stay arbitration must be made by the party sued within 20 days after service upon him of the notice of demand or he shall be precluded. Ordinarily, this limitation is strictly enforced and a court has no jurisdiction to entertain an untimely application (see Matter of Spychalski [Continental Ins. Cos.], 58 AD2d 193 [4th Dept 1977], affd 45 NY2d 847 [1978]; Matter of Allcity Ins. Co. [Vitucci], 151 AD2d 430 [1st Dept 1989], affd 74 NY2d 879 [1989]).
Clearly, more than 20 days has expired. The question is whether the statute of limitations under CPLR 7503 precludes this court from entertaining this application when the matter to be arbitrated is against public policy. Logic dictates that if the matter to be arbitrated is against public policy, then it is not the proper subject of arbitration. Arbitration agreements are unenforceable where substantive rights, embodied by statute, express a strong public policy which must be judicially enforced (see Harris v Iannaccone, 107 AD2d 429, 431-432 [1st Dept 1985], affd 66 NY2d 728 [1985]). A violation of part 137 expresses a strong public policy with respect to unethical agreements by attorneys who attempt to take advantage of their clients. An agreement which violates this rule is, therefore, nonarbitrable.
*581 “There is no anomaly in not enforcing a Statute of Limitations when to do so would aid and assist the party claiming its protection in violating the law. To permit the arbitration to continue and then refuse to confirm the award is a waste of time and effort. Judicial economy suggests that the process be stopped now, rather than wait” (Matter of Toffler v Pokorny, 157 Misc 2d at 708).
If the issue to be arbitrated is against public policy, the arbitrator does not have the jurisdiction to reach a conclusion concerning a provision of an agreement which is patently illegal (Matter of Toffler v Pokorny, 157 Misc 2d at 708). Thus, even if the statute of limitations has expired, the commencement and continuation of this arbitration with respect to that provision is void ab initio.
Accordingly, the arbitration is permanently stayed.[3]

. According to petitioner, one of petitioner’s business acquaintances recommended SRP to assist her in pursuing claims against her former employer, American Strip Steel, Co. (the Company) — where she had been chief executive officer. The Company’s principal place of business is Kearny, New Jersey, where petitioner’s office was located.

. Petitioner claims that she was emotionally distraught at the time she engaged the services of SRP because the Company had just terminated her employment allegedly without cause following her rejection of allegedly inappropriate and unwanted overt sexual advances perpetrated by the chairman of the Company, who was also a majority shareholder.

. The court is at a loss as to why New York was chosen for the arbitration. It is clearly an example of forum non conveniens because the petitioner is a resident of New Jersey, she retained respondent in New Jersey, respondent maintains offices in New Jersey and New York, the underlying arbitration agreement was signed in New Jersey and the action for which respondent was retained occurred in New Jersey. As far as this court can tell, the only thing that occurred in New York is that respondent filed an EEOC claim on petitioner’s behalf in New York, which the EEOC transferred to New Jersey, SRP filed an assault and battery claim against the chairman of the business where petitioner formerly worked in the United States District Court for the Southern District of New York and the arbitration is to take place in front of the American Arbitration Association in New York. Thus, the majority of the parties’ contacts occurred overwhelmingly in New Jersey. However, it does not matter which jurisdiction’s rules govern because in the final analysis the instant arbitration provision is also violative of New Jersey’s public policy regarding fee dispute arbitration (see e.g. Kamaratos v Palias, 360 NJ Super 76, 821 A2d 531 [2003]).